UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-60041-UU

HENRY AVILA,
                Plaintiff,

Vs.

CWC TRANSPORTATION, LLC,
CARLOS ASSAYAG,
CLEMENTE E. CRUZ,
WILLIAM MASARO,
                Defendant.
_____/

## MOTION TO DISMISS & MEMORANDUM OF LAW IN SUPPORT

The Defendants CWC TRANSPORTATION, LLC ("CWC"); CARLOS ASSAYAG ("Assayag"); CLEMENTE E. CRUZ, ("Cruz"); and WILLIAM MASARO ("Masaro"), collectively referred to as the "Defendant," in accordance with Rule 12, of the Federal Rules of Civil Procedure, file this Motion to Dismiss the Complaint filed by the Plaintiff as the Plaintiff has failed to state a claim for which relief can be granted, and in support thereof the Plaintiff states:

1. The Plaintiff, alleges that all times material hereto, that he was a truck driver delivering petroleum products for his employer the Defendant who is engaged in interstate commerce. (Complaint Para. No. 3 and 4). The Plaintiff regularly operated petroleum trucks with gross weight (GCWR) greater than 10,000 lbs., as the Defendant does not own or operate fuel delivery trucks of a lesser size.

2. The Plaintiff claims that he is entitled to overtime compensation from his employer, the Defendant (Complaint Para. No. 17 and 21) in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. s. 216 (b) and 29 U.S.C. s. 201, et.seq.

1

3. The Plaintiff fails to state a claim for which relief can be granted in that he is not entitled to overtime wages, as claimed by the Plaintiff, because the Plaintiff is an exempt employee who under the FLSA's section 13(b)(1) Motor Carrier Exemption ("MCA") is not entitled to overtime pay. *See 29* U.S.C.§ 213(b)(1).

4. The Defendant has retained the services of the undersigned attorney to represent them in this action and accordingly have agreed to pay a reasonable fee for the undersigned's services along with the costs associated with this action.

## MEMORANDUM OF LAW IN SUPPORT

Failure to state a claim for which relief can be granted is one of the delineated defenses set forth in Rule 12(b)(1) of the Federal Rules of Civil Procedure, which is the Defendant's basis for this Motion to Dismiss.

In ruling on a Motion to Dismiss, the court must accept the non-moving party's allegations as true. *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).* It is very important to note that the Plaintiff clearly affirms in his Complaint that: (i) the Plaintiff is a professional truck driver; (ii) is employed by the Defendant; and (iii) that the Defendant's business and the Plaintiff's employment as a truck driver is engaged in "interstate commerce." (Complaint Para. 3 and 4.)

In furtherance of the facts delineated by the Plaintiff, it should be noted that as a professional truck driver who delivers petroleum products, the Plaintiff is required by 49 U.S.C. 31308, et.seq. to have a United States Department of Transportation, Commercial Driver's License ("CDL"). The Plaintiff's CDL number is Z130-421-66-458-0. Further, the Defendant is mandated to be certified by the United States Department of Transportation in order to be authorized to engage in transportation as a common carrier of property by motor carrier in interstate or foreign commerce. The Defendant met this mandate in August 2007, when the

Department of Transportation issued the Defendant its Certificate, number MC-606256-C.  A copy of this Certificate is attached hereto and incorporated by reference as Exhibit A to this motion.

To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face (see *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)*).  The present action by virtue of the controlling authority cited herein, specifically the Motor Carrier Act (MCA). 29 U.S.C. § 213(b)(1) and the factual basis set forth by the Plaintiff himself in his Complaint, cannot survive this present Motion to Dismiss as the Plaintiff is not entitled to overtime compensation, which is the basis of the Plaintiff's action by law.

It is well established that the Fair Labor Standards Act (FLSA) provides that employers must pay non-exempt employees at "one and one-half times the regular rate" for time worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1).  However, the FLSA exempts "any employee with respect to whom the Secretary of Transportation ("Secretary") has power to establish qualifications and maximum hours of service" under the Motor Carrier Act (MCA). 29 U.S.C. § 213(b)(1) (hereafter, "the MCA Exemption").

The 11th Circuit Court of Appeals in *Lewis v. Eskridge Trucking Co*. No. 11-11366 (11th Cir., 2011), where the Court upheld the District Court's Summary Judgement in favor of the Defendant trucking company, held that an employee is exempt from the overtime provisions of the Fair Labor Standards Act if he is subject to the rules promulgated by the Secretary of Transportation ("Secretary") under the Motor Carrier Act. *Spires v. Ben Hill Cnty., 980 F.2d 683*, 686 (11th Cir. 1993).  The Secretary regulates employees who work for a private motor carrier (i.e the Defendant) that provides transportation in interstate commerce and whose work activities affect the "safety of operation" of that motor carrier, 29 C.F.R. § 782.2, including truck drivers (i.e. the

3

Plaintiff), mechanics, loaders, and helpers, *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 673, 67 S. Ct. 931, 943 (1947).

According to the United States Department of Labor ("DOL") regulations enforcing the FLSA and the applicability of the Motor Carrier Exemption "depends both on the class to which the employee's employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). Thus, to qualify for the Motor Carrier Exemption, the employer must establish two things: (1) that the Defendant is a carrier who is subject to the Secretary of Transportation's jurisdiction and (2) that the employer's employees (i.e. the Plaintiff) engages in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate commerce. *See* 29 C.F.R. §§ 782.2(a)-(b) (2); *see also Alvarado v. I.G.W.T. Delivery Systems, Inc.,* 410 F. Supp. 2d 1272, 1276 (S.D. Fla. 2006); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008). The MCA exemption is found in 29 U.S.C. § 213(b)(1) of the FLSA and provides that the FLSA's overtime provision, section 207, does not apply "to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." *Alvarado v. I.G.W.T. Delivery Sys., Inc*., 410 F.Supp. 2d 1272 (S.D. Fla. 2006). Wherein the Eleventh Circuit explained that:  The Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

4

The first prong, whether an employer is properly classified as a motor carrier under the jurisdiction of the Secretary of the Department of Transportation, is always satisfied where the Secretary has exercised jurisdiction over the employer. *See Mena v. McArthur Dairy, LLC,* 352 Fed. Appx. 303, 306 (11th Cir. 2009). Here, the Plaintiff acknowledged in his Complaint (Para No. 3 and 4) that he works as a truck driver delivering petroleum products by vehicle for the Defendant in interstate commerce. Additionally, the Defendant is registered and regulated by the Department of Transportation as being in engaged interstate commerce, as evidenced by the Defendant's DOT Certification number is MC-606256-C, (Exhibit A.) The Defendant, is a "motor carrier" subject to the Secretary's MCA jurisdiction. See 49 U.S.C. §§ 13102(14), 13501, in that the Defendant delivers petroleum products from various ports and terminals to retail gas stations located in Florida, Georgia, North Carolina and South Carolina. Accordingly, there can be no logical dispute that the Defendant is properly classified as a motor carrier,[1] under the dominion and control of the Secretary of the Department of Transportation.

The second prong is whether the employer's (i.e. the Defendant's) employees (i.e. the Plaintiff) engages in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate commerce. As drivers, the plaintiffs performed job duties that affected "the safety of operation" of motor vehicles. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 677-78 (1947); 29 C.F.R. § 782.3(b).

The Motor Carrier Act gives the Secretary of Transportation the general power to prescribe "qualifications and maximum hours of service of employees of, and standards of equipment, of a

---

[1] *See Walters v. American Coach Lines Of Miami, Inc.,* 575 F.3d 1221, 1226 (11th Cir. 2009) ("[T]he Secretary of Transportation does not have to exercise the authority granted to him by the [Motor Carrier Act] for the motor carrier exemption to be applicable; instead, his power to regulate under the act merely needs to cover a particular group of employees.")

5

motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2). A "motor private carrier" is defined as a person, other than a motor carrier, transporting property by motor vehicle when: (i) the transportation is as provided in section 13501 of this title; (ii) the person is the owner, lessee, or bailee of the property being transported; and (iii) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.49 U.S.C. § 13102(15).

In the case at bar the Plaintiff meets the definition of being a "Motor Private Carrier" in the transportation of petroleum products by the Plaintiff for his employer, the Defendant.  The Plaintiff is bailee of the petroleum products during the time that the Plaintiff picks up his approximately 8,500 gallons of fuel at the suppliers terminal at Port Everglades on behalf of the Defendant and delivers it to the retail gas stations, as part of the commercial contracts and enterprise between the Defendant, the supplier, and the gas station.  Accordingly, the Plaintiff clearly meets the criteria to be considered a Motor Private Carrier.

Further, the Plaintiff pursuant to 49 U.S.C. s.390, et.seq. is required by the DOT to have as specific type of Commercial Driver's License, ("CDL").  As a CDL licensee, the Plaintiff in accordance with DOT regulation 49 CFR s. 395 is limited in the amount of hours that he may work (70 hours per week.)  This is one of many regulations that the Plaintiff as a truck driver is bound by.  This clearly demonstrates that the Plaintiff is under the supervision and regulation of the DOT.

The U.S. Department of Labor ("DOL") on January 11, 2005, issued their Opinion titled "FLSA-2005-10," ("DOL Opinion" or "Opinion.")[2]  This Opinion is instructive for many reasons, but in particular, the factual basis set forth in the opinion is clearly analogous and on-point with the

---

[2] This 2005 opinion rescinds the DOL's prior FLSA and DOL opinion letters dated March 19, 1974, April 1, 1981, August 23, 1982, and January 24, 1985 to the extent that these letters conflict with the position described above.

actions, duties, and responsibilities, of the parties to this action.

The Opinion addresses the DOL's official and published opinion as to the application of the FLSA's section 13(b)(1) motor carrier exemption to drivers such as the Plaintiff herein, who is working for a common carriers of petroleum products (i.e. the Defendant) which involves the transportation by truck of shipments of gasoline, diesel fuel, and ethanol that have previously moved across state lines by pipeline, rail, or ship to a temporary terminal point.  These petroleum products have been produced by major petroleum refining companies like Chevron, Marathon, Exxon-Mobil, and Valero ("Suppliers") and shipped by various means (ship, pipeline, or truck) from the refineries located out of the state of Florida to their temporary holding facilities at Port Everglades, Florida.  At this point in the transportation process the Plaintiff in this action, picks up the petroleum products in his approximate 80,000 lbs tractor trailer and over this final and last leg of the delivery of the petroleum products delivers them to the Defendants' local contractually bound retail gas stations.

This Opinion unequivocally holds that the Plaintiff is not entitled to overtime compensation as he is exempt in accordance with Section 13 (b)(1).  Accordingly, the Plaintiff is unable to state a cause of action for which relief can be granted.  As such, this action should be dismissed with prejudice.

Section 13(b)(1) applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" (the "Motor Carrier Act" or "MCA").  The Department of Transportation ("DOT") has jurisdiction over the safety-affecting employees of motor carriers when the employees operate in interstate commerce, as defined in the MCA. There is no question that the Plaintiff's employer, the Defendant, is a motor carrier and that the Plaintiff as a driver for

7

the Defendant are safety-affecting employees, by the fact that as CDL licensee the Plaintiff is subject to various restrictions on his work environment.  The only issue then is whether the drivers are operating in interstate commerce under the MCA, as interpreted by the DOT, when they transport products over the last leg of their journey and do not drive across a state line.

This initial analysis which incorporates the Plaintiff's own acknowledgements in his Complaint that he engages in the interstate transportation of petroleum products for the Defendant is more than a sufficient factual basis for this Court to find that the parties hereto are subject to the Motor Carrier Exception to the FLSA and as such, the Plaintiff is statutorily prevented from overtime compensation from the Defendant.  Accordingly, this present action should be dismissed with prejudice.

The DOL's Wage and Hour Division's enforcement position for section 13(b)(1) provides that an intrastate leg of an interstate trip is in interstate commerce if it "forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination." 29 C.F.R. 782.7(b)(1).- This is a traditional test of interstate commerce under the FLSA.  *Walling v. Jacksonville Paper Co.,* 317 U.S. 564 (1943). The enforcement position recognizes that interstate commerce under the FLSA and the Motor Carrier Act are not identical, but adopts the slightly broader FLSA interpretation of interstate commerce for purposes of applying the section 13(b)(1) exemption.  29 C.F.R. Section 782.7(b)(1).

Therefore, even if it was argued that the Plaintiffs' transportation of petroleum products took place entirely in the state of Florida, Section 13501's interstate commerce requirement is still satisfied if the goods being transported within the borders of one state are involved in a "practical continuity of movement" in the flow of interstate commerce. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568 (1943).  Put another way, "purely intrastate transportation can constitute part of

interstate commerce if it is part of a continuous stream of interstate travel.  For this to be the case, there must be a practical continuity of movement between the intrastate segment and the overall interstate flow." *Walters v. American Coach,* 575 F.3d 1221 (11th Cir. 2009).  A critical factor in determining the shipment's essential character is the shipper's "fixed and persisting intent" at the time of the shipment. 29 C.F.R. § 782.7(b)(2).  The United States Court of Appeals for the Eleventh Circuit has looked to "practical considerations" when determining whether the shipment is intrastate or interstate in nature.  *See Walters,* 575 F.3d at 1221.  Accordingly, this Court takes a common-sense approach to the character of the defendant company's shipments of goods and products, including petroleum products.

The nature of the transportation in this case and the case at bar can be determined by examining the "intention formed prior to shipment, pursuant to which property is carried to a selected destination by a continuous or unified movement[.]" *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 699 (11th Cir. 1986); *see also Project Hope v. M/V Ibn Sina,* 250 F.3d 67, 74 (2d Cir.2001)(noting that the nature of transportation can be "determined by reference to the intended final destination" of the transportation when that ultimate destination was envisaged at the time the transportation commenced). *Deherrera v. Decker Truck Line, Inc*. 15-1220; 13-CV-025560RM-KLM (10th Cir., 2016) held that the intent inquiry is "fixed" in the sense that courts must look to "the intended final destination of the transportation when that ultimate destination was envisaged *at the time the transportation commenced*." *Bilyou v. Dutchess Beer Distribs*., *Inc*., 300 F.3d 217, 223-24 (2d Cir. 2002); *accord Atl. Coast Line R. Co. v. Standard Oil Co. of Ky*., 275 U.S. 257, 269 (1927) (asking whether the final destination of the shipment is "arranged for or fixed in the minds of the sellers" at the time the initial segment of the journey commenced).  And this intent "persists" from the moment "the goods enter[] the channels of interstate commerce . . .

9

until their interstate journey [ends]," regardless of the number of carriers involved in the transportation. *See Walling*, 317 U.S. at 568; *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 74-75 (2d Cir. 2001) ("Where multiple carriers are responsible for different legs of a generally continuous shipment," the intent at the time of departure "fixes the character of the shipment for all the legs of the transport within the United States.").

It is important to remember in this analysis that the United States Supreme Court has addressed the fact that products are sometimes warehoused at the defendant's facility for periods of time but that this break in transportation does not change the "practical continuity of movement" analysis. *See Wailing v. Jacksonville Paper Co.,* 317 U.S. 564, 568 (1948) ("The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey." A two weeks break in the transportation flow does not change the "practical continuity of movement" analysis). In *Wailing* the Court held that the intrastate transportation of these products was part of a "practical continuity of movement" from manufacturers in Chile, Spain, and Canada to the customers' Florida stores. The Court finds that this movement satisfies the Motor Carrier Act's interstate commerce requirement and is thus sufficient to place the transportation of the goods under the Secretary's jurisdiction pursuant to 49 U.S.C. §13501(1)(E); *Wailing v. Jacksonville Paper Co.,* 317 U.S. 564 (1948).

The Defendant at bar has long term contractual relationships with the suppliers, and/or Fuel Distributors and Marketers, on behalf of the retail gas stations that the Defendant and Plaintiff provide petroleum products to. These contracts are based on required minimum amounts of petroleum products which are acquired from and refined by the aforementioned petroleum Shippers. These contracts establish orders which are based on historical petroleum product purchases, market analysis, and other various business and marketing analysis conducted by the

Defendant, the Suppliers, and the Defendant & Supplier's retail customers, individually and collectively.

There is no question that this requirement is satisfied under the MCA and section 13(b)(1) for the intrastate leg of the trip. The Plaintiff acknowledged in the Complaint (Para. 3 and 4) that as a driver for the Defendant, he and the Defendant are actively engaged in interstate commerce. Therefore, this important element is met and as such the Plaintiff is exempt from overtime compensation under section 13(b)(1). Accordingly, the present action should be dismissed with prejudice.

Further analysis of this issue, if required by this Honorable Court, demonstrates that the DOT in 1992 issued new guidelines which provides the following factors for determining the "fixed and persisting intent" of a shipper that merchandise continue in interstate commerce when moving goods intrastate from storage facilities: (i) Even if a shipper does not know the ultimate destination of specific shipments, it bases its determination on the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State. This may include, but is not limited to, historical sales in the State, actual present orders, and relevant market surveys of need; (ii) No processing or substantial product modification of substance occurs at the warehouse or distribution center; However, repackaging or reconfiguring (secondary packaging) may be performed; (iii) While in the warehouse, the merchandise is subject to the shipper's control and direction to the subsequent transportation; (iii) Modern tracking systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center. (iv) The shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges to the carrier; (v) The warehouse

utilized is owned by the shipper; (vi) The shipments move through the warehouse pursuant to a storage in transit provision. 57 Fed. Reg. at 19813. Advantage Tank Lines, Inc., No. MC-C-30198, 10 ICC 2d 64 (1994). See also Atlantic Independent Union v. Sunoco, 2004 WL 1368808 at 7 (E.D. Pa. 2004).

Additionally, the DOT declared that the presence of one or more of the following factors is not sufficient to establish a break in the continuity that would change the interstate character of the subsequent transportation: (i) The shipper's lack of knowledge of the specific, ultimate destination or consignee at the time the shipment leaves its out-of-State origin; (ii) Separate bills of lading for the inbound and outbound movements instead of through bills of lading; (iii) Storage-in-transit tariff provisions; (iv) Storage receipts issued by the warehouse distribution center; (v) Time limitations on storage; (vi) Payment of transportation charges by the warehouse or distribution center, when the shipper or consignee is ultimately billed for these charges; (vii) Routing of the outbound shipments by the warehouse or distribution center; (viii) A change in carriers or transportation modes at a distribution facility; (ix) Use of brokers retained by the shipper; and/or (x) Use of a warehouse not owned by the shipper. See 57 Fed. Reg. at 19813.

In other words, even if the Defendant was the subject of, or to the foregoing events, these events would not defeat the appropriate finding that the Defendant and the Shipper are squarely within scope and criteria to be with-in the shipper's "fixed and persisting intent" in the Defendant's participation of the delivery of the Shipper's products (i.e. petroleum products) as part of the interstate commerce.

Accordingly, the Defendant and the Plaintiff's respective roles in the delivery of petroleum products from Port Everglades to the Defendant's retail customers, is well within the fixed and persisting intent of the Shipper and Defendant and well within in the last and final leg of interstate

12

commerce.

As noted through this motion, the 11th Circuit along with District Courts in the State of Florida have addressed the same issue that is presently before the Court on numerous occasions prior to this present action being filed.  The holdings by these courts consistently hold, like the Court in Rodriguez v. Pan & Plus Baking, LLC Case Number: 12-23193-CIV-MORENO (S.D. Fla., 2013) that the plaintiff, truck drivers similar to the Plaintiff in this action, claim they worked in excess of forty hours per week during their employment and are therefore entitled to overtime compensation from their former employers (similar to the Defendant in this action) under the FLSA.  However, the Court held that the plaintiffs are not due overtime wages because they are exempt employees under the Motor Carrier Exemption and thus not entitled to overtime pay. *See 29* U.S.C.§ 213(b)(1).

The undisputed facts of this case, which are delineated herein includes the Plaintiff himself acknowledging that he was a truck driver for the Defendant, who was engaged in interstate commerce.  Consequently, the Plaintiff is not entitled to overtime compensation as he is exempt in accordance with FLSA's section 13(b)(1) Motor Carrier Exemption.  Accordingly, the Plaintiff is unable to state a cause of action for which relief can be granted.  As such, this action should be dismissed with prejudice.

WHEREFORE, Defendant respectfully requests that this Court dismiss the Plaintiff's present action with prejudice, as the Plaintiff is not entitled to overtime compensation, as a matter of law; award the Defendant their reasonable attorney's fees and costs associated with defending this action; together with whatever further relief that this Court deems just and proper.

CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading which was filed with the Clerk of the Court was provided to the Defendant's attorney, Elliot Kozolchyk, Esquire, Koz Law, P.A. 320 SE 9th Street, Fort Lauderdale, FL 33316 @ ekoz@kozlawfirm.com via the Court's E-Portal on February 3, 2017.

/s/ RANDY M. GOLDBERG, ESQUIRE
RANDY M. GOLDBERG & ASSOCIATES, PA
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net
randymgoldberg@gmail.com