UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**CASE NO: 17-CV-60041-O'SULLIVAN**
[Consent]

HENRY AVILA,

        Plaintiff,

Vs.

CWC TRANSPORTATION, LLC,
Et. al.,

        Defendant.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT WITH INCORPORATED MEMORANDUM OF LAW

The Defendants CWC TRANSPORTATION, LLC ("CWC"); CARLOS ASSAYAG ("Assayag"); CLEMENTE E. CRUZ, ("Cruz"); and WILLIAM MASARO ("Masaro"), collectively referred to as the "Defendants," pursuant to and in accordance with Fed. R. Civ. P. 56 and the Southern District of Florida's Local Rule 56.1(a) hereby file this their Motion for Summary Judgment. For the reasons stated below, the Defendants respectfully request that their motion be granted and judgment be entered in their favor.

### Introduction

The Plaintiff is professional truck driver who was employed by the Defendants to deliver petroleum products from the fuel terminals of major petroleum manufactures and refineries (collectively referred to as "Supplier")[1] located at Port Everglades, Florida to retail gas stations located in Florida, in the final leg of interstate commerce as the Plaintiff's delivery of these petroleum products are clearly part of the continuous stream of interstate travel.

1

The Plaintiff contends that they are entitled to overtime compensation from the Defendants for the hours that they worked in excess of forty (40) hours a week, pursuant to Section 7 of the Fair Labor and Standards Act ("FLSA"), 29 U.S.C §207(a).  However, the Defendants maintain that they are <u>not</u> required to pay overtime compensation to the Plaintiffs/drivers as the parties clearly fall within the Motor Carrier Exemption, under Section 13 (b)(1) of the FLSA and 29 U.S.C §213(b)(1) ("MCE").

This Motion for Summary Judgment raises a single, straightforward question of law; whether the Plaintiff's delivery of petroleum products for the Defendants falls within the MCE. As will be shown below, there are no material facts in dispute and when applied to the controlling law, the Defendants are entitled to judgment as a matter of law because they unequivocally qualify for the exemption under the MCE.

## **<u>Joint Stipulation of Facts</u>**

The Parties have entered into a Joint Stipulation of Facts ("JSF") (DE 52).  The JSF acknowledges that the Plaintiff was a full time employee of the Defendants, (who are covered employers under the FLSA), driving tanker trucks provided by the Defendants, delivering petroleum products for the Defendants from fuel terminals located at Port Everglades, Florida to retail gas stations in Florida.  The Plaintiff regularly worked over 40 hours per week. (JSF ¶¶1,2,3,4.)

The Plaintiff claims that he is entitled to overtime compensation pursuant to the FLSA. (JSF ¶6.)  The Defendants contend that they are exempt from paying overtime compensation to Plaintiffs based on the MCE. (JSF ¶7.)  The Plaintiff's only basis for claiming that the MCE does

---

[1] Valero, Chevron, Marathon, Exxon-Mobil, etc.

not apply to the case at bar is that the Plaintiff believes that their delivery of petroleum products for the Defendants was not part of interstate commerce. (JSF ¶8.)

The Defendants contend that the delivery of petroleum products from Port Everglades to the retail gas stations by the Plaintiff/driver was clearly part of interstate commerce. (JSF ¶¶2, 7.) Thus, the determination of this Court as to whether the MCE applies to the present action is dispositive to this motion.

The parties stipulated that the small vehicle exception to the MCE does not apply in this case. (JSF ¶10.)   Therefore, the only issue before the Court is whether Plaintiff's delivery of petroleum products for the Defendants was part of interstate commerce.

### Defendants' Statement of Undisputed Material Facts

The Defendants filed their Statement of Undisputed Material Facts ("SOF") contemporaneously with the filing of this Motion for Summary Judgment.

### Affidavit in Support of Motion for Summary Judgment

The Defendants filed a sworn Affidavit in Support of the Motion for Summary Judgment ("AFF.") contemporaneously with this Motion for Summary Judgement.   The Affiant was Defendant Carlos Assayag, a managing member of Defendant CWC Transportation.

### Standard of Review

Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The movant "bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S. 317. 3232 (1986).  To discharge this burden, not only must the movant point out to the Court that there is an absence of evidence to support the non-moving party's case, *Id*. at 325, but the non-moving party must rely on more than conclusory statements of allegations unsupported by facts.   *Evers v. General Motors Corp*., 770 F 2d 984, 986 (11th Cir. 1985).

After the movant has met their burden under Rule 56 (c), the burden of production shifts and the non-moving party, "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electronic Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).*  According to the plain language of the Federal Rules of Civil Procedure 56(e), the non-moving party, may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matushita, 475 U.S. at 587.

As the question presented by the litigation is exclusively a question of law, there are no genuine disputes of material fact and the matter can appropriately be decided on summary judgment.

## Argument

**The Defendants are Entitled to Judgment as the Motor Carrier Exemption Negates any Obligation for the Defendants to Pay Overtime Compensation to the Plaintiffs.**

The Plaintiff is a truck driver employed by the Defendants (SOF ¶1; JSF ¶2), as defined under 29 CFR 782.3(a), who believe the MCE of the Fair Labor Standards Act ("FLSA") does

4

not apply to the present action because their transportation of petroleum products for the Defendants was not in interstate commerce.  (SOF ¶ 20; JSF ¶8.)  In fact, the Plaintiff has claimed that the only basis as to why the MCE did not apply to them, is that "the transportation involved in Plaintiff's duties was not in interstate commerce."  (SOF ¶¶ 20 & 21; and JSF ¶8.)

The FLSA requires employers to pay employees time-and-a-half for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). This provision, however, "shall not apply with respect to any employee with respect to whom the Secretary of the Department of Transportation ("Secretary") has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. §213(b)(1); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009; 29 C.F.R. §782.2(a).  The Secretary is deemed to have such power, and thereby the MCE is triggered, if two requirements are met: (1) the employee is employed by a carrier "whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under section 204 of the Motor Carrier Act"; and (2) the employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. §782.2(a); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009.  "[T]he Secretary need not actually exercise power to regulate under the Motor Carrier Act; an exemption under section 13(b)(1) [MCE] is created so long as the Secretary has the authority to regulate over a particular category of employees." *Spires v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir. 1993); *Walters v. Am. Coach Lines of Miami, Inc.,*575 F.3d 1221 (11th Cir.2009); *Lewis v. Eskridge Trucking Co*. No. 11-11366 (11th Cir., 2011) (The Lewis Court

upheld the District Court's Summary Judgement in favor of the Defendant trucking company and held that an employee is exempt from the overtime provisions of the Fair Labor Standards Act if he is subject to the rules promulgated by the Secretary under the Motor Carrier Act.)  *See* 29 U.S.C. §213(b)(1).  The Secretary regulates employees who work for a private motor carrier that provides transportation in interstate commerce and whose work activities affect the "safety of operation" of that motor carrier, 29 C.F.R. §782.2, this includes truck drivers (i.e. the Plaintiff herein), mechanics, loaders, and helpers.  *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 673, 677, (1947)

  **1. The Defendants clearly meet the Two-Prong Test of the MCE and as such the Defendants are exempt from any overtime obligation to the Plaintiffs.**

  According to the United States Department of Labor ("DOL") regulations enforcing the FLSA, the applicability of the MCE "depends, both on the class to which his [Plaintiff's] employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a); U.S. Department of Labor, Wage & Hour Division, Opinion, FLSA 2005-10, January 11, 2005; U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009.  Thus, to qualify for the MCE, the Defendant/employer must meet a two prong test: (1) that the Defendant is a carrier who is subject to the Secretary's jurisdiction and (2) that the employer's employees (i.e. the Plaintiffs) engage in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate commerce. *See* 29 C.F.R. §§ 782.2(a)-(b) (2); *Mena v. McArthur Dairy, LLC,* 352 Fed. Appx. 303, 306 (11th Cir. 2009).[2] (The Court in Mena affirmed the Employer/Defendant's summary judgment as the employer established both

elements of the MCE.   Accordingly, the Plaintiff cannot avail himself of the benefits of the overtime pay provision found in 29 U.S.C. § 207(a)(1)); *Rodriguez v. Pan & Plus Baking, LLC,* Case Number: 12-23193-CIV-MORENO (S.D. Fla. 2013) (The Rodriguez/Plaintiff, truck drivers were denied overtime wages because they are exempt employees under the MCE and thus not entitled to overtime pay); See 29 U.S.C.§ 213(b)(1).

> **A.   The Defendants Meet the First Prong of the Test of the Motor Carrier Exemption**.

The first prong, whether an employer is properly classified as a motor carrier under the jurisdiction of the Secretary is clearly met as the Plaintiff has acknowledged in their response to the Request for Admissions that the Defendants meet the definition of being either a "Motor Private Carrier" or "Motor Carrier" as defined in 49 USC §13102. (SOF ¶14.)  Consequently, by the Plaintiff's own acknowledgments, the Defendants meet the first prong of the MCE.

In the event this Court requires further discussion regarding the first prong of the MCE, the Defendants note that whether an employer is properly classified as a Motor Carrier under the jurisdiction of the Secretary, is <u>always satisfied</u> where the Secretary has exercised jurisdiction over the employer. *See Mena,* 352 Fed. Appx. at 303.

In support that the Secretary has exercised jurisdiction over the Defendants, the Defendants have attached hereto <u>Exhibit A</u>,[3] which is the Department of Transportation ("DOT") Certificate issued to the Defendant CWC in 2007, which assigned to Defendant CWC, Motor Carrier Number MC-606256-C, and recognized Defendant CWC as a motor carrier, and authorizes Defendant CWC to engage in interstate commerce.

---

[2] Mena v. McArthur Dairy, LLC, No. 09-12657 Non-Argument Calendar, September 22, 2009; Southern District of Florida Docket No. 08-22585-CV-UU.

Further, the DOT issued to the Defendant CWC, the DOT Pipeline and Hazardous Materials Safety Administration, Hazardous Materials Certificate of Registration for Registration Years 2016-2019, Reg. No. 061616 551 064YA; HM Company ID: 100939. This registration and document is required by the DOT for the Defendant CWC through their employees/the Plaintiffs to transport petroleum products. A copy of the current 2016-2019 certification and the previously issued certification for years 2013 – 2016 are attached hereto as Composite Exhibit B to this motion.

Clearly, the foregoing registrations with the DOT not only grant authority to the Defendants and their employees/the Plaintiffs to engage in interstate commerce, it issues the Defendant their DOT Motor Carrier Number, and allows the Defendants through their employees, the Plaintiffs the authority to transport and deliver petroleum products in interstate commerce. Clearly, the Secretary has demonstrated significant regulatory oversight and control over the Defendant, as required in *Mena,* 352 Fed. Appx. At 303.

The Defendants demand compliance from all their drivers in accordance with 49 C.F.R. 390.11.[4] These regulations include, but are not limited to the Plaintiffs being required: (i) to have a Commercial Driver's License ("CDL") to be employed by the Defendants, (SOF ¶¶2, 3); pursuant to 49 U.S.C. §383.1, et. seq; (ii) required to maintain log books of the hours that they drive for the Defendants (SOF ¶4); pursuant to 49 U.S.C. §395.8, et. seq.; and (iii) limited in the amount of hours that the Plaintiffs may work (i.e. 70 hours per week) in accordance with 49 CFR §395.3. To ensure compliance by the Plaintiff/driver, the Defendants have employed three (3) full

---

[3] The Plaintiff have agreed to the authentication of the both Exhibit A and B in a stipulation.
[4] Whenever a duty is prescribed for a driver or a prohibition is imposed upon the driver, it is the duty of the motor carrier to require observance of such duty or prohibition.

time inspectors whose sole function on a 24/7 basis is to ensure that the Plaintiff driver is performing his duties in compliance with the Secretary, DOT and other regulations. (AFF. ¶ 21.)

Therefore, not only has the Plaintiff acknowledged that the Defendants meet the first prong of the MCE, but the foregoing independently proves that the Defendants meet the first prong of the MCE, consistent with the 11th Circuit in *Mena,* 352 Fed. Appx. at 303.

> **B.** **The Defendants meet the Second Prong of the Test of the Motor Carrier Exemption**.

The second prong of the MCE is a two (2) part prong.  Whether the Plaintiff: (i) engages in activities that affect the safety of operation of motor vehicles in the transportation of passengers or property (ii) in interstate commerce. *See* 29 C.F.R. §§ 782.2(a)-(b) (2); *Mena,* 352 Fed. Appx. at 303; U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009.

The Plaintiff unequivocally acknowledged that the Plaintiff's duties and responsibilities as employees of the Defendants include "safety affecting activities" within the meaning of the Motor Carrier Act of 1935, as amended.  (SOF ¶¶12 & 19.)  As such, the first part of the second prong of the MCE is clearly met and satisfied.

As to the second part of the second prong, the Plaintiff clearly, unambiguously, and repeatedly acknowledged in his Complaint (DE 1, ¶3) that the Plaintiff worked as a truck driver delivering petroleum products for the Defendants and that the Defendants "engaged along with its employees in interstate commerce." (SOF ¶¶1 & 13.)

As such, the second and final part of the second prong of the MCE is met and satisfied by the Plaintiff's own pleadings (SOF ¶13) and acknowledgments (SOF ¶¶12 & 19).

In the event this Court requires further discussion regarding the second prong of the MCE, the Court must first examine the following:

<u>Contradictory Position by Plaintiff with Their Own Previously Stated Allegations</u>

The Plaintiff in his Complaint (DE 1, ¶3) acknowledged that the Plaintiff worked as a truck driver delivering petroleum products for the Defendant and that the, "Defendant who engaged along with its employees in 'interstate commerce'." (SOF ¶¶1 & 13.)  The Plaintiff is now claiming that the only reason that the MCE does not apply to the case at bar is that the Parties were not engaged in interstate commerce. (SOF ¶¶ 20 & 21; JSF ¶8.)

It is well established that a plaintiff must include factual allegations for each essential element of his or her claim in their complaint *GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 23 Fla. L. Weekly Fed. C 1323 (11th Cir., 2012); and that judicial admissions must be clear, deliberate, and unequivocal factual assertions—whether made in pleadings, stipulations, responses to discovery, or orally in trial or court proceedings. *In re Malia,* No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012) (quoting *Keller v. United States,* 58 F.3d 1194, 1199 n. 8 (7th Cir.1995); Rule 56 of the Federal Rules of Civil Procedure.  Further, such "factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. Arco/polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983), citing *Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134 (5th Cir. 1978); *State Farm Mutual Auto Insurance Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968); *Mull v. Ford Motor Co.*, 368 F.2d 713, 716 (2d Cir. 1966); *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 110 F.Supp.3d 1285, 1293 (N.D. Ga., 2014) ("Judicial admissions '*in judicio*' are 'formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding

10

upon the party making them.'" *In re Malia,* No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012) (quoting *Keller v. United States,* 58 F.3d 1194, 1199 n. 8 (7th Cir.1995).

For the Plaintiff to now be allowed to recant or ignore their previous pleadings and representations would be repugnant to the holdings and responsibilities detailed in *GeorgiaCarry.org, Inc.,* 687 F.3d 1244, 23 Fla. L. Weekly Fed. C 1323 (11th Cir., 2012); et. al. Accordingly, this Court respectfully should find that the Plaintiff's representation in his Complaint that he engaged in <u>interstate commerce</u> be considered as a proper admission that the Plaintiff's duties as truck drivers delivering petroleum products for the Defendant was in interstate commerce.

<u>Further Argument as to the Second Prong of Motor Carrier Exemption Test</u>

In the event the Court still requires further discussion regarding the second prong of the MCE, the Defendants can clearly demonstrate that the Plaintiffs engaged in activities directly affecting the safety of operation of motor vehicles in transportation on public highways of property in interstate commerce. *Mena,* 352 Fed. Appx. at 303; U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009.

<u>A.  First Part of Second Prong of the of Motor Carrier Exemption
(Activities Directly Affecting the Safety of Operations)</u>

The Plaintiff/driver is responsible for the proper loading of the petroleum products from the Suppliers' fuel terminals at Port Everglades, the transportation of the petroleum products along the roadways, which includes Interstate Highways (i.e. including but not limited to I-95, I-595, I-75) to the retail gas station locations and the delivery of the petroleum products at the retail locations.  (SOF ¶¶5, 11, 19; AFF. ¶22).  In fact, the Plaintiff has acknowledged that his

work only involved duties directly relating to the delivery of petroleum products for the Defendants. (SOF ¶19)  Accordingly, the Plaintiff performed job duties that clearly affected "the safety of operation" of motor vehicles. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 677-78 (1947) (It is not the amount of time or the character of a driver's activities that the employee/driver spends on activities affecting safety, but what the employee does in the time spent that is significant as safety is paramount.);  29 C.F.R. § 782.3(b); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009, ¶2.

Accordingly, the Plaintiff's duties and responsibilities as an employee of the Defendants include "safety affecting activities" within the meaning of the Motor Carrier Act of 1935, as amended, was clearly acknowledged by the Plaintiff. (SOF ¶19); and consistent with the *Levinson* standard and the U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009, ¶2.  Consequently, this requirement of the second prong of the MCE is clearly met.

B.  Second Part of Second Prong of the of Motor Carrier Exemption
(Interstate Commerce)

The Plaintiff's delivery of the petroleum products from Port Everglades, FL to various retail locations in the State of Florida, was wholly within the state of Florida.  Nonetheless, for the purposes of the Motor Carrier Act, "purely intrastate transportation can constitute part of interstate commerce if it is part of a `continuous stream of interstate travel." *Mena,* 352 Fed. Appx. at 303; *Chao v. First Class Coach Co., Inc.*, 214 F.Supp.2d. 1263, 1272 (M.D. Fla. 2001) (Purely intrastate transportation can constitute part of interstate commerce if it is part of a "continuous stream of interstate travel."); U.S. Department of Labor Wage and Hour Division,

12

Fact Sheet #19, November 2009; 29 C.F.R. 782.7(b)(1).  For this to be the case, there must be a "practical continuity of movement" between the intrastate segment and the overall interstate flow.  *Walters v. American Coach Lines of Miami, Inc*., 575 F.3d 1221, (11th Cir. 2009) (Holding that intrastate shuttle service for cruise passengers from an airport to a seaport was part of the practical continuity of movement of interstate travel); see also *Bilyou v. Dutchess Beer Distribs., Inc*., 300 F.3d 217, 223 (2d Cir.2002) (applying this standard in analyzing applicability of MCE).

Courts are now "guided by practical considerations" in determining whether an employee's activities would be part of interstate commerce for purposes of the FLSA.  *Marshall v. Victoria Transp. Co., Inc*., 603 F.2d 1122, 1123 (5th Cir.1979).  "When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency [such as the Defendants in this action] solely within the boundaries of one state does not make that portion of the trip any less interstate in character."  *United States v. Yellow Cab Co*., 332 U.S. 218, 228, 67 S.Ct. 1560, 1566, 91 L.Ed. 2010 (1947),[5] overruled on other grounds by *Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).  As a result, purely intrastate transportation can constitute part of interstate commerce if it is part of a "continuous stream of interstate travel."  *Chao v. First Class Coach Co., Inc*., 214 F.Supp.2d. 1263, 1272 (M.D. Fla. 2001);  U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009, ¶2.

---

[5] Although Yellow Cab involved a Sherman Act Anti-Trust Act Claim, the Courts have looked to it for guidance regarding the scope of interstate movement under different statutes including the Motor Carrier Act.   See, e.g., Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 256-57 & n. 10 (3d Cir.2005).    If

The Defendants' business involves the transportation by tanker trucks of shipments of petroleum products by the Plaintiff/driver (JSF ¶2; SOF ¶¶1, 5) that have previously moved across state lines by pipeline, rails and/or ship from the Suppliers which are located outside of the State of Florida,[6] to the Suppliers' fuel terminals located at Port Everglades, Florida.  (SOF ¶17; AFF. ¶23.)  After the petroleum products previous interstate movement, into the Suppliers' terminals at Port Everglades, the Plaintiff would drive to Port Everglades, load the pre-ordered petroleum products from the Suppliers' fuel terminals into tanker trucks provided by the Defendants and drive and deliver the petroleum products to predetermined retail gas station customers, where they would deliver the pre-ordered petroleum products. (SOF ¶5; AFF. ¶24.) As such, the Plaintiff/driver who was an employee of the Defendants, are clearly the final leg of interstate commerce, as they are part of the continuous stream of interstate travel, as defined by *Mena,* 352 Fed. Appx. at 303; *Chao,* 214 F.Supp.2d. at 1263; and the U.S. Department of Labor Wage and Hour Division, in Fact Sheet #19, November 2009, ¶2.

In further support of this process, each load of petroleum products that the Plaintiff/driver would pick up from Port Everglades and deliver to the retail locations is accompanied by a Bill of Lading, similar in form and substance as to the two (2) sample Bill of Ladings attached hereto as <u>Exhibit C</u>.  (SOF ¶¶9 & 10; AFF. ¶25).   The Bill of Lading identifies the Supplier, the petroleum fuel distributor, the carrier (i.e. the Defendant CWC), the end customer (i.e. the retail locations), and the type and amount of petroleum products delivered by the Plaintiff/driver to the designated point of destination (i.e. retail location, as pre-ordered by the customer (retail

---

anything, Yellow Cab's conception of interstate commerce may be more restrictive than that applicable for FLSA claims.   See Marshall, 603 F.2d at 1124.

[6] There are no oil wells or oil refineries in the State of Florida (SOF ¶17.)

locations) through the Suppliers.  (AFF. ¶26.)  The Bills of Lading are created based on standing orders from Suppliers' ratable volume of fuel as determined by the Suppliers; which is based on various supply agreements, historical performance and sales with the end-user gas stations as determined by the petroleum Suppliers.  (AFF. ¶27.)

If the Court requires further analysis in support of the Defendants and their driver, the Plaintiff being engaged in the final leg of interstate commerce, then this Court should respectfully apply the new standard, specific criteria, and interpretation from the DOT for determining whether goods are moving in interstate commerce from terminal points or terminal storage, such as the Suppliers' fuel terminals at Port Everglades after they have crossed a state line.  DOT issued guidance as to its jurisdiction under the MCA for "motor traffic moving from warehouses or similar facilities to points in the same State after or preceding a movement from another State." 57 Fed. Reg. 19812, May 8, 1992.  These newer DOT guidelines incorporate case law that developed subsequent to the cases upon which section 782.7(b)(2) was originally based.  Thus, the DOT now provides the following factors[7] which are clearly met in this case, for determining the "fixed and persisting intent" of a shipper (i.e. the Suppliers) that merchandise continue in interstate commerce when moving goods intrastate from storage facilities, in that: (i)

---

[7] (i) even if a shipper does not know the ultimate destination of specific shipments, it bases its determination on the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State. This may include, but is not limited to, historical sales in the State, actual present orders, and relevant market surveys of need; (ii) no processing or substantial product modification of substance occurs at the warehouse or distribution center. However, repackaging or reconfiguring (secondary packaging) may be performed; (iii) while in the warehouse, the merchandise is subject to the shipper's control and direction to the subsequent transportation; (iv) modern tracking systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center; (v) the shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges to the carrier; (vi) the warehouse utilized is owned by the shipper; (vii) the shipments move through the warehouse pursuant to a storage in transit provision. 57 Fed. Reg. at

The Suppliers/Shippers know the ultimate destinations of their shipments as the Suppliers' shipments to their fuel terminals in Port Everglades, is based upon standing orders from Suppliers' ratable volume of fuel which is based on various supply agreements, historical performance and sales with the end-user gas stations as determined by the petroleum Suppliers. (AFF. ¶28.) (ii) There is no processing or substantial product modification that takes place at Port Everglades (SOF ¶17).   The petroleum products are stored for a brief period, until the Plaintiff/driver load the products in their tankers and deliver them to the retail locations, in accordance with the Bills of Lading.  (AFF. ¶28; SOF ¶¶5, 9.) (iii) The petroleum products while at Port Everglades is maintained at the fuel terminals owned, controlled and operated by the Suppliers. (AFF. ¶28) (iv) All of the Suppliers' petroleum products while at the Suppliers' fuel terminals located at Port Everglades is documented and tracked by the Suppliers/Shippers, this includes the receipt and distribution of their petroleum products which occurs 24/7. *Id.* (v) The Suppliers are ultimately responsible for all transportation charges relating to the Defendants. *Id.* (vi) The fuel terminals are owned and controlled by the Suppliers/shippers. *Id.* (vii) All of the petroleum products that are received and subsequently distributed are subject to de minimus "storage in transit"[8] at Port Everglades.  The petroleum products are constantly arriving at Port Everglades from the Suppliers, while at the same time the Plaintiff/driver is loading the designated petroleum fuel into their trucks and transporting the petroleum products to the retail gas stations, reflected on the Bills of Lading provided to them by the Defendants. (SOF ¶¶ 5, 9' AFF. ¶28.)

---

19813. *Advantage Tank Lines, Inc.*, No. MC-C-30198, 10 ICC 2d 64 (1994). See also *Atlantic Independent Union v. Sunoco*, 2004 WL 1368808 at *7 (E.D. Pa. 2004); 29 C.F.R. 782.7(b)(2).

In *Mena*, the milk products were not modified once it reached McArthur's warehouse.  In the case at bar, the petroleum products were not modified when they were at the Suppliers' fuel terminals at Port Everglades.  Like in *Mena*, the petroleum products were distributed to the Suppliers' customers based on standing orders from the Suppliers' supply agreements, historical performance and sales with the point of destination gas stations as determined by the Suppliers. Under these circumstances, the Suppliers' fuel terminals, like McArthur's warehouse was nothing more than a temporary storage hub used to facilitate the orderly distribution of products through interstate commerce.  Thus, the Plaintiff/driver transporting petroleum products on behalf of the Suppliers, like *Mena's* transportation of milk products was clearly part of the "practical continuity of movement" across state lines and was the final leg in interstate commerce.  *Mena,* 352 Fed. Appx. at 303; *See Walters v. Am. Coach Lines of Miami, Inc.,*575 F.3d 1221, 1229 (11th Cir.2009) (Holding that intrastate shuttle service for cruise passengers from an airport to a seaport was part of the practical continuity of movement of interstate travel); *Kennedy v. Equity Transp. Co.*, 2015 U.S. Dist. LEXIS 143565 (N.D.N.Y Oct. 22, 2015)(Although applicability of the Motor Carrier Act (MCA) exemption from overtime is predicated on "interstate commerce," interstate commerce can include wholly intrastate travel by a covered employee when shipped in a "practical continuity of movement" across state lines); *Abel v. S. Shuttle Servs., Inc.,* 631 F.3d 1210, 1216-18 (11th Cir.2011) (per curiam) (Applying the MCA exemption to airport shuttle company because passenger reservations were often purchased as part of a package deal with airline tickets, creating a practical continuity of movement in interstate commerce); *Walters,* 575 F.3d at 1221, 1229 (quoting *Chao,* 214 F.Supp.2d at 1263, 1272.)

---

[8] "Storage in Transit," is defined as the storing at an intermediate point of goods that are to be reshipped to their final

It is abundantly clear, that the Plaintiff/driver and the Defendants are engaged in interstate commerce; not only as pled by the Plaintiff himself in his Complaint; but because the Defendants have unequivocally shown that the Plaintiff/driver on behalf of the Defendants transportation of petroleum products for the Suppliers was clearly part of the "practical continuity of movement" across state lines and was the final leg in interstate commerce, in conformity with the cited and controlling case law.  As such, the second and final requirement of the second prong of the Motor Carrier Exemption is met and satisfied.

Accordingly, the Defendants have successfully established all of the required elements for applying the MCE to the case at bar.  Therefore, the Plaintiff cannot avail himself of the benefits of the overtime pay provision found in 29 U.S.C. § 207(a)(1).  Accordingly, The Defendants' Motion for Summary Judgment should be granted.

## CONCLUSION

The Plaintiff unequivocally made representations and acknowledgments throughout this litigation, through: (i) the Plaintiff's Complaint; (ii) through the Joint Stipulation of Facts; and (iii) through the discovery process, that clearly and succinctly support that they meet all the criteria for the Motor Carrier Exemption to be applicable to this action. These representations and acknowledgments include, but are not limited to:

1.      The Defendants meet the definition of being either a "Motor Private Carrier" or "Motor Carrier" as defined in 49 USC §13102.  (SOF ¶14).

---

destination with in a prescribed period.  Merriam-Webster.com.  September 9, 2017.

2.       The Plaintiff's duties and responsibilities as employees of the Defendants include "safety affecting activities" within the meaning of the Motor Carrier Act of 1935, as amended. (SOF ¶¶12 & 19).

3.       The Plaintiff worked as a truck driver delivering petroleum products for the Defendants and that the, "Defendants who engaged along with its employees [i.e. the Plaintiff] in 'interstate commerce'." (SOF ¶13).

Aside from the Plaintiff's above acknowledgements and representations, the Defendants have clearly met the standards set forth by the controlling law required to have the Motor Carrier Exemption apply to the case at bar.  This present action is absolutely analogous to the 11th Circuit Court of Appeals decisions in *Mena v. McArthur Dairy, LLC,* 352 Fed. Appx. 303, 306 (11th Cir. 2009), a Southern District case[9] as well as other 11th Circuit Court cases and Southern District Court cases cited herein.  For the foregoing reasons, the Defendants respectfully request that this Honorable Court enter Summary Judgment in favor of the Defendants, and declare that the parties herein clearly fall within the Motor Carrier Exemption, under Section 13 (b)(1) of the FLSA and 29 U.S.C. §213(b)(1); and as such, the Plaintiff is not entitled to over-time compensation from the Defendants.

WHEREFORE the Defendants respectfully requested that this Honorable Court grant the Defendants' Motion for Summary Judgment, as the Defendants have clearly proven that the Motor Carrier Exemption applies to the case at bar and the Plaintiff is thus barred from the recovery of overtime compensation by the Defendants; together with whatever further relief that this Honorable Court deems fit and proper.

Respectfully submitted:

RANDY M. GOLDBERG & ASSOCIATES, PA
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this pleading which was filed with the Clerk of the Court was provided to the Plaintiff's attorney, Elliot Kozolchyk, Esquire, Koz Law, P.A. 320 SE 9th Street, Fort Lauderdale, FL 33316 @ ekoz@kozlawfirm.com via the Court's CM/ECF-Portal on October 17, 2017.

*Randy M. Goldberg Esquire*
RANDY M. GOLDBERG & ASSOCIATES, PA
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net
randymgoldberg@gmail.com

---

[9] Honorable Ursula Ungaro was the trial court judge.

# EXHIBIT A

# CWC Transportation

1093 Shotgun Road
Sunrise, 33326
**954-431-5389**
**Date:** Monday 1/16/2017

## sun-MARATHON 149

16815 S Dixie HWY
Palmetto Bay , FL 33157

# SUNSHINE

| Product | Gross Vol | Net Vol | Inches | | Terminal | Manifest |
|---------|-----------|---------|--------|------|----------|----------|
| | | | **In** | **Out** | | |
| Regular | 5703 | 5648 | 88 | 125 | MAR-PES | 957483 |
| Super | 2801 | 2772 | 29 | 50 | MAR-PES | 957483 |

**Time Loaded:** 1/16/2017 2:01:36 PM
**Time Dropped:** 1/16/2017 3:33:55 PM
**Driver:** Raydel Martinez

Customer Signature:

1

*A*

COMPANY:        **MPLX TERMINALS LLC**           LOADING TICKET / BILL OF LADING
ORIGIN:         909 SE 24TH ST FT LAUDERDALE, FL 33316    COMPANY REGISTRATION NUMBER: 6396
**BOL NUMBER** 957483   REV: 0 (018655)          FOLIO #: 20170111
RT LOAD:   01/16/2017 13:45:28   END LOAD:  01/16/2017 13:56:03

| SOLD TO / CUSTOMER / CONSIGNEE: | SHIP TO / DESTINATION: |
|---|---|
| 492638 : SUNSHINE GASOLINE DISTRIBUTOR-BRAND | 492638 : SUNSHINE GASOLINE DISTRIBUTOR-BRAND VARIOUS |
| | FL |
| | P.O. #: |
| CUSTOMER ACCOUNT # : 449263800101000 | REQUISITION: |
| SUPPLIER: BRANDED JOBBERS | DEST : 101 |

RECEIVED BY / CARRIER:       7926:C W C TRANSPORTATION L       SCAC CODE : CWCL
                                                              TRAILER : 20

WHERE THIS DOCUMENT CONSTITUTES A BILL OF LADING, AND AN EXCEPTION STATED IN 49 C.F.R. 6172.204(B) IS NOT MET, THIS IS TO CERTIFY THAT THE
BELOW-NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED, LABELED AND ARE IN PROPER CONDITION FOR TRANSPORTATION
ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION. CARRIER CERTIFIES THAT THE CARGO TANK SUPPLIED FOR THIS
SHIPMENT IS A LAWFUL CONTAINER FOR TRANSPORTATION OF THE LISTED COMMODITIES. CARRIER CERTIFIES THAT THE CARGO TANK WAS REASONABLY
FREE OF EXCESSIVE RESIDUE OR OTHER CONTAMINATING MATERIALS WHEN PRESENTED FOR LOADING.

**SEE REVERSE FOR ADDITIONAL TERMS AND CONDITIONS**

| 10058091 MARTINEZ, RAYDEL (RM) | X | :CARRIER'S AGENT (DRIVER) |
|---|---|---|

## HAZARD INFORMATION AND LABEL ON REVERSE SIDE

DOT SHIPPING NAME                 HAZARD LABEL #                         GALLONS
UN1203, GASOLINE, 3, PG II                   1                              8504
                                        TOTAL QUANTITY 1 CARGO TANK:       8504

## 24 HOUR EMERGENCY PHONE NUMBER 1-877-627-5463
### FINISHED PRODUCTS

| COMP | PROD-CODE | DESCRIPTION | GROSS | NET | TEMP | GRAV | SEE NOTES BELOW |
|---|---|---|---|---|---|---|---|
| 1 | 7845 - | BRAND 93 OCTANE WITH 10% ETHANOL | 2801 | 2772 | 75.2 | 59.8 | 1,6,10,48,Z |
| 2 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 1301 | 1288 | 74.2 | 64.6 | 1,6,10,48,Z |
| 3 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 1100 | 1090 | 72.7 | 64.6 | 1,6,10,48,Z |
| 4 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 901 | 892 | 72.9 | 64.6 | 1,6,10,48,Z |
| 5 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 2401 | 2378 | 73.2 | 64.6 | 1,6,10,48,Z |
| TOTALS: | 7845 - 5A | BRAND 93 OCTANE WITH 10% ETHANOL | 2801 | 2772 | | | |
| | 7842 - 5A | BRAND 87 OCTANE WITH 10% ETHANOL | 5703 | 5648 | | | |

### NOTES

Z    NOT INTENDED FOR USE IN E15.

1    CONVENTIONAL GASOLINE - THIS PRODUCT DOES NOT MEET THE REQUIREMENTS FOR REFORMULATED GASOLINE (RFG) AND MAY NOT BE USED IN ANY
     REFORMULATED GASOLINE COVERED AREA.

6    DETERGENT-ADDITIZED GASOLINE.

10   E10: CONTAINS BETWEEN 9 AND 10 VOL % ETHANOL.

48   THIS VOLUME OF NEAT OR BLENDED ETHANOL IS DESIGNATED AND INTENDED FOR USE AS TRANSPORTATION FUEL OR JET FUEL IN THE 48 U.S.
     CONTIGUOUS STATES AND HAWAII. ANY PERSON EXPORTING THIS FUEL IS SUBJECT TO THE REQUIREMENTS OF 40 CFR 80.1430.

| RECEIPT IS ACKNOWLEDGED OF THE ABOVE MERCHANDISE IN GOOD CONDITIONS AND IN THE QUANTITIES INDICATED | | |
|---|---|---|
| | X | :CUSTOMER / CONSIGNEE |

# CWC Transportation

1093 Shotgun Road
Sunrise, 33326
**954-431-5389**
**Date:**Monday 1/16/2017

---

## sun-EXXON 91

901 NW 19th Street
Ft. Lauderdale, FL.

# SUNSHINE

| Product | Gross Vol | Net Vol | Inches | | Terminal | Manifest |
|---------|-----------|---------|--------|--------|----------|----------|
| | | | **In** | **Out** | | |
| Regular | 6000 | 5958 | 392 | 68 | EXX-PTE | 1384858 |
| | | | 35 | 74 | | |
| | | | **In** | **Out** | | |
| Super | 2500 | 2482 | 35 | 54 | EXX-PTE | 1384858 |

**Time Loaded:** 1/16/2017 12:55:37 PM
**Time Dropped:** 1/16/2017 2:10:02 PM
**Driver:** Lloyd Crowle

Customer Signature:

1

| SOLD TO: | SOLD TO / CONTRACT# | PO # | PLANT ID# 00000A7 | BOL # |
|---|---|---|---|---|
| | IN0000368590 | | FOLIO #: 01/016 | 1384858 |

SOLD TO:
SUNSHINE GASOLINE DISTRIBUTORS, INC
1650 NW 87 AVE
DORAL, FL  33172

**SHIPMENT ORIGIN:**
1150 Spangler Blvd.
Ft. Lauderdale, FL 33316

SHIP TO:
SUNSHINE GASOLINE DISTRIBUTORS, INC
P/U PORT EVERGLADES, FL - XOM
PORT EVERGLADES, FL   33316

SHIP TO #
IN0000368610

**TRANSFEROR:**
ExxonMobil Oil Corporation
22777 Springwood Village Parkway
Spring, TX   77389
EPA Facility Reg. #     0435081694

LOAD IN / DATE:
12:37
01/16/17

LOAD OUT / DATE:
12:46
01/16/17

EPA #:
4343

FEIN #:
13-5401570

TRNS CODE: 530      SEQ#: 5290

| NO. UNITS & CONTAINER TYPE | BASIC DESCRIPTION Identification Number [UN or NA], Proper Shipping Name, Hazard Class, Packing Group, per 172.101, 172.202, 172.203 | TOTAL QUANTITY Weight, Gallons, Volume |
|---|---|---|
| 1 CARGO TANK | UN1203, GASOLINE, 3, P.G. II | 8500 GALLONS |

**FOR PRODUCT EMERGENCY - SPILL, LEAK, FIRE, OR EXPOSURE, CALL CHEMTREC  800-424-9300 DAY OR NIGHT. CCN687006**
SEE REVERSE SIDE FOR HAZARDOUS WARNING, INITIAL EMERGENCY RESPONSE GUIDE (ERG128) AND OTHER INFORMATION.

| METER # | MATERIAL # | MATERIAL DESCRIPTION | GROSS | TEMP. | GRAVITY | NET |
|---|---|---|---|---|---|---|
| Bay-03 | 106337 | EXXON 93 OCT CG 3.5W%O2 ETOH | 2500 | 70.9 | 58.6 | 2482 |
| 01-01 | 103687 | 93 OCT CBOB - BASE | 2250 | | | 2235 |
| 01-02 | 106268 | ETHANOL,NO RINS TRANSFERRED | 250 | | | 247 |
| Bay-03 | 106353 | EXXON 87 OCT CG 3.5W%O2 ETOH | 2200 | 69.7 | 65.3 | 2185 |
| 02-01 | 103685 | 87 OCT CBOB - BASE | 1980 | | | 1968 |
| 02-03 | 106268 | ETHANOL,NO RINS TRANSFERRED | 220 | | | 217 |
| Bay-03 | 106353 | EXXON 87 OCT CG 3.5W%O2 ETOH | 3800 | 69.9 | 65.3 | 3773 |
| 03-01 | 103685 | 87 OCT CBOB - BASE | 3420 | | | 3398 |
| 03-02 | 106268 | ETHANOL,NO RINS TRANSFERRED | 380 | | | 375 |
| | | | ----- | | | ----- |
| | | Total Gallons: | 8500 | | | 8440 |

THIS PRODUCT IS CONVENTIONAL GASOLINE CONTAINING DETERGENT ADDITIVE. THIS
PRODUCT DOES NOT MEET THE REQUIREMENTS FOR REFORMULATED GASOLINE AND MAY NOT BE
USED IN ANY REFORMULATED GASOLINE COVERED AREA.
E10: CONTAINS  BETWEEN 9 AND 10 VOL%  ETHANOL.
This volume of neat or blended ethanol is designated and intended for use as
transportation fuel or jet fuel in the 48 U.S.contiguous states and Hawaii. Any
person exporting this fuel is subject to the requirements of 40 CFR 80.1430.
DOR LICENSE # 13-5401570

EXXONMOBIL IS RESPONSIBLE FOR COLLECTING AND REMITTING THE STATE MOTOR FUEL TAXES.

ALL DOT SHIPPING INFORMATION CONTAINED ON PAGE NO. 1          PAGE NO. 1

| DRIVER NAME | DRIVER # | SCAC | FEIN # |
|---|---|---|---|
| LLOYD  CROWLE | 3656 | CWCL | 0260156778 |
| TRUCK: | TRAILER 1:13 | | |

Carrier has loaded and accepted the above named materials and
certifies that this shipment is properly placarded and the container
supplied for this shipment is a proper container for the transportation
of this commodity under D.O.T. regulations. Driver acknowledges
Emergency Response Guide 128 Information received on reverse
side of this document.

CARRIER
CWC TRANSPORTATION
1093 SHOTGUN RD
SUNRISE, FL   33326
(954)862-7776

FREIGHT
COLLECT

DATE:   01/16/17
DRIVER/ AGENT
SIGNATURE:

# EXHIBIT B



U.S. Department of Transportation
Federal Motor Carrier Safety Administration

1200 New Jersey Ave., S.E.
Washington, DC 20590

**SERVICE DATE**
August 17, 2007

### CERTIFICATE

**MC-606256-C**

CWC TRANSPORTATION LLC
PEMBROKE PINES, FL

This Certificate is evidence of the carrier's authority to engage in transportation as a **common carrier of property (except household goods)** by motor vehicle in interstate or foreign commerce.

This authority will be effective as long as the carrier maintains compliance with the requirements pertaining to insurance coverage for the protection of the public (49 CFR 387) and the designation of agents upon whom process may be served (49 CFR 366). The carrier shall also render reasonably continuous and adequate service to the public. Failure to maintain compliance will constitute sufficient grounds for revocation of this authority.

*Kathy A. Weiner*

Kathy Weiner, Chief
Information Systems Division

**NOTE:** Willful and persistent noncompliance with applicable safety fitness regulations as evidenced by a DOT safety fitness rating of "Unsatisfactory" or by other indicators, could result in a proceeding requiring the holder of this certificate or permit to show cause why this authority should not be suspended or revoked.

CMO

B

# EXHIBIT C

**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION**



### HAZARDOUS MATERIALS
### CERTIFICATE OF REGISTRATION
### FOR REGISTRATION YEAR(S) 2016-2019

**Registrant:**   CWC TRANSPORTATION LLC
Attn: CARLOS ASSAYAG
1093 SHOTGUN RD
SUNRISE, FL 33326

This certifies that the registrant is registered with the U.S. Department of Transportation as required by 49 CFR Part 107, Subpart G.

This certificate is issued under the authority of 49 U.S.C. 5108. It is unlawful to alter or falsify this document.

**Reg. No: 061616 551 064YA**        **Effective: 07/01/2016**        **Expires: 06/30/2019**

**HM Company ID: 100939**

---

**Record Keeping Requirements for the Registration Program**

The following must be maintained at the principal place of business for a period of three years from the date of issuance of this Certificate of Registration:

(1)  A copy of the registration statement filed with PHMSA; and
(2)  This Certificate of Registration

Each person subject to the registration requirement must furnish that person's Certificate of Registration (or a copy) and all other records and information pertaining to the information contained in the registration statement to an authorized representative or special agent of the U. S. Department of Transportation upon request.

Each motor carrier (private or for-hire) and each vessel operator subject to the registration requirement must keep a copy of the current Certificate of Registration or another document bearing the registration number identified as the "U.S. DOT Hazmat Reg. No." in each truck and truck tractor or vessel (trailers and semi-trailers not included) used to transport hazardous materials subject to the registration requirement.  The Certificate of Registration or document bearing the registration number must be made available, upon request, to enforcement personnel.

For information, contact the Hazardous Materials Registration Manager, PHH-52, Pipeline and Hazardous Materials Safety Administration, U.S. Department of Transportation, 1200 New Jersey Avenue, SE, Washington, DC 20590, telephone (202) 366-4109.

# EXHIBIT D

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION



**HAZARDOUS MATERIALS
CERTIFICATE OF REGISTRATION
FOR REGISTRATION YEAR(S) 2013-2016**

**Registrant:**    CWC TRANSPORTATION LLC
Attn: CARLOS ASSAYAG
1093 SHOTGUN RD
SUNRISE, FL 33326

This certifies that the registrant is registered with the U.S. Department of Transportation as required by
49 CFR Part 107, Subpart G.

This certificate is issued under the authority of 49 U.S.C. 5108. It is unlawful to alter or falsify this
document.

**Reg. No: 050313 550 038VX          Issued: 05/06/2013          Expires: 06/30/2016**

**HM Company ID: 100939**

---

**Record Keeping Requirements for the Registration Program**

The following must be maintained at the principal place of business for a period of three years from the
date of issuance of this Certificate of Registration:

(1)   A copy of the registration statement filed with PHMSA; and
(2)   This Certificate of Registration

Each person subject to the registration requirement must furnish that person's Certificate of Registration
(or a copy) and all other records and information pertaining to the information contained in the registration
statement to an authorized representative or special agent of the U. S. Department of Transportation upon
request.

Each motor carrier (private or for-hire) and each vessel operator subject to the registration requirement
must keep a copy of the current Certificate of Registration or another document bearing the registration
number identified as the "U.S. DOT Hazmat Reg. No." in each truck and truck tractor or vessel (trailers
and semi-trailers not included) used to transport hazardous materials subject to the registration
requirement.  The Certificate of Registration or document bearing the registration number must be made
available, upon request, to enforcement personnel.

For information, contact the Hazardous Materials Registration Manager, PHH-52, Pipeline and Hazardous
Materials Safety Administration, U.S. Department of Transportation, 1200 New Jersey Avenue, SE,
Washington, DC 20590, telephone (202) 366-4109.

# EXHIBIT E

# United States Department of Labor

## Wage and Hour Division

Wage and Hour Division (WHD)

**FLSA2005-10**

**January 11, 2005**

Dear **Name***,

This is in response to your letter requesting an opinion as to the application of the FLSA's section 13(b)(1) motor carrier exemption to drivers working for an associated group of common carriers of petroleum products. The employers in question have approximately 3,000 drivers and operate in 30 states.

The business of the **Name*** employers involves the transportation by truck of shipments of gasoline, kerosene, home heating oil, diesel fuel, and ethanol that have previously moved across state lines by pipeline, rail, or ship. These petroleum products have been produced by the major petroleum refining companies and shipped by various means to their retail customers and commercial users. The Name* drivers pick up the products at various terminals or storage facilities after their previous movement and transport them over the last leg of the delivery of the products. The question is whether these drivers are subject to the FLSA's section 13(b)(1) overtime exemption during this intrastate movement.[1]

**Name*** states that in some of the trips the out-of-state producer/shipper has designated the shipment to fill the order of a specifically named customer. Other shipments are the result of standing orders or the historic demands of the producers' customers and, when shipped, do not name a final destination beyond the end of the pipeline or storage facility at that location.

Section 13(b)(1) applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" (the "Motor Carrier Act" or "MCA"). The Department of Transportation ("DOT") has jurisdiction over the safety-affecting employees of motor carriers when the employees operate in interstate commerce, as defined in the MCA. There is no question that the Name* employers are motor carriers and that the drivers are safety-affecting employees. The only issue is whether the drivers are operating in interstate commerce under the MCA, as interpreted by DOT, when they transport products over the last leg of their journey and do not drive across a state line.

The Wage and Hour Division's enforcement position for section 13(b)(1) provides that an intrastate leg of an interstate trip is in interstate commerce if it "forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination." 29 C.F.R. 782.7(b)(1).[2] There is no question that this requirement is satisfied under the MCA and section 13(b)(1) for the intrastate leg of the trip when the out-of-state shipper designates a final destination of the goods at the time of shipment. See Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 223 (2nd Cir. 2002) (interstate commerce present when "'the property is carried to a selected destination . . .'") (citation omitted). Thus, under the relevant interpretations of interstate commerce, the **Name*** drivers would be in interstate commerce and exempt under section 13(b)(1) when they transport the shipments to a specifically named final destination.

The determination of interstate commerce for the final leg of shipments not sent to a named recipient, but held in storage between legs of the trip, has traditionally been governed by a more specific provision at 29 C.F.R. 782.7(b)(2). This regulation is based on rulings of the Interstate Commerce Commission as to its jurisdiction in this particular situation, and is one of the exceptions from the application of the general FLSA definition of interstate commerce described in section 782.7(b)(1).[3] That specific regulation provides that interstate commerce, and thus the application of section 13(b)(1), stops at the terminal storage facility if the shipper has no fixed and persisting transportation intent past the terminal storage point at the time of shipment. A shipper has no such intent if three conditions are satisfied:

1. At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and

2. the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and

3. transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.[4]

29 C.F.R. 782.7(b)(2). Where these facts are established, interstate commerce is deemed to end at the terminal storage facility. See Watkins v. Ameripride Services, 2004 WL 1487393 *4 (9th Cir. 2004) (where uniforms were purchased from out of state and held in a warehouse until later sold, trip from warehouse to customer was intrastate and the drivers were not subject to section 13(b)(1)).

However, the specific criteria in section 782.7(b)(2) for determining whether goods are moving in interstate commerce from terminal points or terminal storage after they have crossed a state line have been supplemented for specific situations by a more recent interpretation from DOT. DOT issued guidance as to its jurisdiction under the MCA for "motor traffic moving from warehouses or similar facilities to points in the same State after or preceding a movement from another State" at 57 Fed. Reg. 19812, May 8, 1992.[5] These newer DOT guidelines incorporate case law that developed subsequent to the cases upon which section 782.7(b)(2) was based. Thus, the DOT now provides the following factors for determining the "fixed and persisting intent" of a shipper that merchandise continue in interstate commerce when moving goods intrastate from storage facilities:

1. Even if a shipper does not know the ultimate destination of specific shipments, it bases its determination on the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State. This may include, but is not limited to, historical sales in the State, actual present orders, and relevant market surveys of need.

2. No processing or substantial product modification of substance occurs at the warehouse or distribution center. However, repackaging or reconfiguring (secondary packaging) may be performed.

3. While in the warehouse, the merchandise is subject to the shipper's control and direction to the subsequent transportation.

4. Modern tracking systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center.

5. The shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges to the carrier.

6.  The warehouse utilized is owned by the shipper.

7.  The shipments move through the warehouse pursuant to a storage in transit provision.

57 Fed. Reg. at 19813. *Advantage Tank Lines, Inc.*, No. MC-C-30198, 10 ICC 2d 64 (1994). See also *Atlantic Independent Union v. Sunoco*, 2004 WL 1368808 at *7 (E.D. Pa. 2004).

Additionally, the DOT declared that the presence of one or more of the following factors is not sufficient to establish a break in the continuity that would change the interstate character of the subsequent transportation:

1.  The shipper's lack of knowledge of the specific, ultimate destination or consignee at the time the shipment leaves its out-of-State origin;

2.  Separate bills of lading for the inbound and outbound movements instead of through bills of lading;

3.  Storage-in-transit tariff provisions;

4.  Storage receipts issued by the warehouse distribution center;

5.  Time limitations on storage;

6.  Payment of transportation charges by the warehouse or distribution center, when the shipper or consignee is ultimately billed for these charges;

7.  Routing of the outbound shipments by the warehouse or distribution center;

8.  A change in carriers or transportation modes at a distribution facility;

9.  Use of brokers retained by the shipper;

10. Use of a warehouse not owned by the shipper.

See 57 Fed. Reg. at 19813.

**Name\*** services can be divided into two categories, A and B. Category A movements involve deliveries to customers for the shipper (typically a major petroleum refiner that retains control over the product until it reaches the destination intended by the shipper, such as a specific retail gas station or commercial end user) of predetermined quantities on a routine basis either to fill standing or specific orders or based on their historic demands for the products. Category B movements follow the sale of the product to marketers, and are based on pre-existing contracts with the volume based on specific or standing orders from the marketers or on their historical usage, and the marketers arrange for **Name\*** for the final transportation of the product. Based on the information provided, the above factors 1, 2, 3 and 5 from the first list are clearly met for Category A deliveries. Even when the shipper does not know the ultimate destination of the petroleum when it leaves the shipper's plant, the volume of the shipment is based on historical sales figures. Additionally, no further processing of the petroleum occurs at the storage facility. The whole process is overseen by the shipper, meeting the requirements of the third factor. The fifth factor is met because the shipper bears the ultimate payment for transportation.

As for Category B deliveries, factors 1, 2, and 3 from the first list are also met as they were for Category A deliveries. Absent information as to the remaining factors sufficient to compel a contrary result, the intrastate movements of petroleum in both categories A and B appear to qualify as interstate activity under the MCA, and thus the drivers are exempt from overtime under section 13(b)(1) during this time.

We are as of this date withdrawing opinion letters dated March 19, 1974, April 1, 1981, August 23, 1982, and January 24, 1985 to the extent that these letters conflict with the position described above. These withdrawn letters were all written before the most recent (1992) DOT interpretation that is the basis of the position taken in this letter. Thus, they do not contain a complete description of the facts that should be considered in evaluating the applicability of the MCA and section 13(b)(1).

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances which would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division of the Department of Labor.

Sincerely,

Alfred B. Robinson, Jr
Acting Administrator

*Note: * The actual name(s) was removed to preserve privacy.*

---

[1] **Name*** states that in approximately 26% of their deliveries the drivers move across state lines. Interstate commerce is clear for such movements.

[2] This is a traditional test of interstate commerce under the FLSA. Walling v. Jacksonville Paper Co., 317 U.S. 564 (1943). The enforcement position recognizes that interstate commerce under the FLSA and the Motor Carrier Act are not identical, but adopts the slightly broader FLSA interpretation of interstate commerce for purposes of applying the section 13(b)(1) exemption, "except in those situations where the [Interstate Commerce] Commission has held or the Secretary of Transportation or the courts hold otherwise." Section 782.7(b)(1). As discussed below, the specific situation described in the opinion request does involve a situation subject to decisions of the courts and the Secretary of Transportation.

[3] The Interstate Commerce Commission regulated motor carrier safety prior to the Secretary of Transportation. Congress abolished the ICC on January 1, 1996 and transferred many of its functions to the newly created Surface Transportation Board, an agency within the Department of Transportation. *See* ICC Termination Act of 1995, Pub.L. No. 104-88, § 101, 109 Stat. 803, 804 (1995).

[4] Under comparable circumstances, the last leg of the trip could be interstate commerce under the FLSA. *See* Jacksonville Paper, 317 U.S. at 568-9 (interstate commerce continues after storage at a warehouse when goods are ordered with a "pre-existing contract or understanding with the customer . . .," the goods are treated as "stock in trade . . .," and title passes at the warehouse).

[5] Because DOT is the final administrative authority for the MCA, its interpretation of its jurisdiction is controlling. *See* Martin v. Coyne International Enterprises, Inc., 966 F.2d 61 (2nd Cir. 1992).

# EXHIBIT F

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division

November 2009

# Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA)

Section 13(b)(1) of the FLSA provides an overtime exemption for employees who are within the authority of the Secretary of Transportation to establish qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act of 1935, except those employees covered by the small vehicle exception described below.

Thus, the 13(b)(1) overtime exemption applies to employees who are:

1.   Employed by a motor carrier or motor private carrier, as defined in 49 U.S.C. Section 13102 (see **Employer** below);
2.   Drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce (see **Employee Duties** below); and
3.   Not covered by the small vehicle exception (see **Small Vehicle Exception** below).

## 1. Employer

- Motor Carriers are persons providing motor vehicle transportation for compensation;

- Motor Private Carriers are persons other than motor carriers transporting property by motor vehicle if the person is the owner, lessee, or bailee of the property being transported, and the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise.

## 2. Employee Duties

- The employee's duties must include the performance, either regularly or from time to time, of safety-affecting activities on a motor vehicle used in transportation on public highways in interstate or foreign commerce. Employees must perform such duties as a driver, driver's helper, loader, or mechanic. Employees performing such duties meet the duties requirement of the exemption regardless of the proportion of "safety affecting activities" performed, except where the continuing duties have no substantial direct effect on "safety of operation," or where such safety affecting activities are so trivial, casual, and insignificant as to be de minimis (so long as there is no change in the duties).

- Transportation involved in the employee's duties must be in interstate commerce (across State or international lines) or connect with an intrastate terminal (rail, air, water, or land) to continue an interstate journey of goods that have not come to rest at a final destination.

- Safety affecting employees who have not made an actual interstate trip may still meet the duties requirement of the exemption if:

  a)   The employer is shown to have an involvement in interstate commerce; and

  b)   The employee could, in the regular course of employment, reasonably have been expected to make an interstate journey or could have worked on the motor vehicle in such a way as to be safety-affecting.

- The Secretary of Transportation will assert jurisdiction over employees for a four-month period beginning with the date they could have been called upon to, or actually did, engage in the carrier's interstate activities.  Thus, such employees would satisfy the duties requirement of the Section 13(b)(1) exemption for the same four-month period, notwithstanding references to the contrary in 29 C.F.R. § 782.2.

FS 19

### 3. Small Vehicle Exception

Notwithstanding the Section 13(b)(1) exemption, the overtime provisions of Section 7 of the FLSA shall apply to an employee of a motor carrier or motor private carrier in any work week that:

1. The employee's work, in whole or in part, is that of a driver, driver's helper, loader or mechanic affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles:

   (a) Designed or used to transport more than 8 passengers, including the driver, for compensation; or

   (b) Designed or used to transport more than 15 passengers, including the driver, and not used to transport passengers for compensation; or

   (c) Used in transporting hazardous material, requiring placarding under regulations prescribed by the Secretary of Transportation;

   and

2. The employee performs duties on motor vehicles weighing 10,000 pounds or less.

The Section 13(b)(1) exemption does not apply to an employee in such work weeks even though the employee's duties may also affect the safety of operation of motor vehicles weighing greater than 10,000 pounds, or other vehicles listed in subsections (a), (b) and (c) above, in the same work week.

### Typical Problems

The Section 13(b)(1) overtime exemption does not apply to employees not engaged in "safety affecting activities", such as dispatchers, office personnel, those who unload vehicles, or those who load but are not responsible for the proper loading of the vehicle. Only drivers, drivers' helpers, loaders who are responsible for proper loading, and mechanics working directly on motor vehicles that are to be used in transportation of passengers or property in interstate commerce can be exempt from the overtime provisions of the FLSA under Section 13(b)(1).

The Section 13(b)(1) overtime exemption does not apply to employees of non-carriers such as commercial garages, firms engaged in the business of maintaining and repairing motor vehicles owned and operated by carriers, or firms engaged in the leasing and renting of motor vehicles to carriers.

### Where to Obtain Additional Information

For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.