```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                     CASE NO. 17-CV-60041-JJO

 3    HENRY AVILA,
                                      Fort Lauderdale, Florida
 4              Plaintiff(s),
                                      February 14, 2018
 5         vs.

 6    CWC TRANSPORTATION, LLS,
      CARLOS ASSAYAG, et al.,
 7
                Defendant(s).       Pages 1 - 35
 8    -----------------------------------------------------------

 9                             HEARING
             BEFORE THE HONORABLE JOHN J. O'SULLIVAN
10               UNITED STATES MAGISTRATE JUDGE

11    APPEARANCES:

12    FOR THE PLAINTIFF(S):  ELLIOT ARI KOZOLCHYK, ESQ.
                             320 S.E. 9th Street
13                           Fort Lauderdale, Florida 33316
                             786-924-9929
14                           ekoz@kozlawfirm.com

15
      FOR THE DEFENDANT(S):  LISA DECKER MACCLUGAGE, ESQ.
16                           CATALINA M. AVALOS, ESQ.
                             Tripp Scott
17                           110 S.E. 6th Street
                             15th Floor PO Box 14245
18                           Fort Lauderdale, Florida 33302
                             954-760-4912
19                           ldm@trippscott.com
                             cma@trippscott.com
20
                             RANDY MARK GOLDBERG, ESQ.
21                           1101 SW 71st Avenue
                             Plantation, Florida 33317
22                           754-224-0867
                             rmgesq@comcast.net
23

24    TRANSCRIBED BY:        Joanne Mancari, RPR, CRR, CSR
                             Court Reporter
25                           jemancari@gmail.com
```

1          THE COURT:  Henry Avila v. CWC Transportation, LLC,

2   case No. 17 Civ. 60041.

3          Could I have appearances for the plaintiff first.

4          MR. KOZOLCHYK:  Good afternoon, your Honor.  Elliot

5   Kozolchyk on behalf of the plaintiff Henry Avila.

6          THE COURT:  Thanks.

7          And for the defendants.

8          MS. MACCLUGAGE:  Good afternoon, your Honor.  Lisa

9   MacClugage, from Tripp Scott, on behalf of the defendants.

10          MS. AVALOS:  Good afternoon, your Honor.  Catalina

11   Avalos on behalf of the defendants as well.

12          THE COURT:  Thanks.

13          MR. GOLDBERG:  Randy Goldberg on behalf of the

14   defendants, your Honor.

15          THE COURT:  OK.  Good.

16          I understand you all have resolved this matter.  Is

17   that correct?  We are going to have a fairness hearing?

18          MS. MACCLUGAGE:  Yes, your Honor.

19          MS. AVALOS:  Yes, your Honor.

20          MR. KOZOLCHYK:  We are still trying to iron out some

21   of the terms.  There is some disagreement as to some of the

22   terms.  The main thrust of the settlement we are in agreement

23   on.

24          THE COURT:  Tell me what the terms of the settlement

25   are.

```
 1              We are only dealing with Mr. Avila, correct?
 2         MS. MACCLUGAGE:  Well, your Honor, it was supposed to
 3    be a global settlement.  The agreement is a global settlement
 4    with the Judge Zloch's case as well.
 5         THE COURT:  But I mean, I don't have the authority
 6    over Judge Zloch's case to do a fairness hearing.  So I need to
 7    hear about Mr. Avila.
 8         MR. KOZOLCHYK:  No problem, your Honor.
 9         MS. AVALOS:  I can give you the terms, your Honor.  I
10    have them written down.
11         THE COURT:  OK.
12         MS. AVALOS:  If I may.  The total gross amount is
13    $302,768.93, which with 52,768.93 to be paid within ten days of
14    the court's approval.
15         THE COURT:  OK.
16         MS. AVALOS:  $20,000 to be made within 90 days.  The
17    remainder is going to be paid in monthly payments for, in the
18    amount of $3,000 over a period of 77 months.
19         THE COURT:  And this is just for Mr. Avila?
20         MS. AVALOS:  No, sir.  The problem is it is the global
21    settlement and one is contingent upon the other.  Mr. Avila's
22    numbers are -- I can tell you what his numbers are based on
23    plaintiff's counsel's representation.
24         Mr. Avila's gross recovery -- bear with me for one
25    moment.  I apologize -- is $24,736.20.
```

```
1          THE COURT:  OK.

2          MS. AVALOS:  The attorneys' fees -- again, it is on a

3   global settlement -- in this case are, the fees are

4   $120,211.85.  Costs are $2,272, as represented by Mr. Elliot.

5          THE COURT:  OK.  Well, here is the problem.  I am

6   approving this settlement only on Mr. Avila.  You may go to

7   Judge Zloch and he may tell you I'm not approving this 77

8   payments.  I'm not going to keep jurisdiction over this case

9   for 78 months, and then that's another issue.

10         So the settlement of Mr. Avila is not contingent on

11  Judge Zloch accepting the agreement or anything else.  It's

12  going to be Mr. Avila is getting 24,736, and how many

13  plaintiffs are in this case?

14         MR. KOZOLCHYK:  21.

15         MS. AVALOS:  22, your Honor.

16         22.  Excuse me.

17         THE COURT:  So I don't know the attorneys' fees, if

18  you apportion it to Mr. Avila, it is 6 or 7,000 dollars.  Is

19  that correct?

20         MS. AVALOS:  I'm not sure what the calculations are,

21  but whatever the apportionment would be.  And I apologize, your

22  Honor, because the idea was to have you -- and we had reached

23  out to the court.  We prepared a joint motion to present to

24  Judge Zloch.  Unfortunately, we did not hear back from

25  Mr. Elliott with regards to being able to file that motion so
```

1   that we could have all this.

2          However, we have at all times -- from our position,

3   it's been a global settlement.  But if the court wants to --

4          THE COURT:  I mean, here is the problem.  We are going

5   to try this case next week.  We don't have any time for it to

6   be a global settlement.  I suspect you're not getting in front

7   of Judge Zloch between now and Friday at 5:00.

8          If this case settles, it settles.  If it doesn't

9   settle, then we try it next week.

10         Because of the way this case is divided, I'm not

11  approving a settlement contingent on Judge Zloch approving a

12  settlement next week or ten days from now.  We just don't have

13  the time.  If the case was set off to be tried in three months,

14  I would say sure.  If you could figure that out, that's fine.

15  But we don't have that luxury.

16         MR. KOZOLCHYK:  Your Honor, is there any way you can

17  extend the trial date --

18         THE COURT:  No.

19         MR. KOZOLCHYK:  -- so we can sort this out?

20         THE COURT:  I am not extending this trial date.

21         MS. AVALOS:  Just so your Honor knows, some of the

22  challenges that we have had to deal with is your Honor ordered

23  us to meet.  We changed the hour to accommodate counsel.  On

24  Friday afternoon we met and we went ahead and reached the

25  settlement terms for the most part and then on Sunday confirmed

1    those terms.

2            THE COURT:  I appreciate that.

3            MS. AVALOS:  I worked all day on Sunday to get over a

4    copy of the settlement agreement, and we got that over to

5    counsel.  We heard back from counsel last night at 8:00 at

6    night.  We still have not received a response -- well, it

7    doesn't matter at this point -- with regards to our motion for

8    joint settlement.

9            So if your Honor wants to partition the attorneys'

10   fees and we will do the mathematics computations and resolve

11   Mr. Avila's case, I guess that is what we will have to do, your

12   Honor.

13           THE COURT:  Do you have to check with your client?

14           MS. MACCLUGAGE:  No, your Honor.

15           MS. AVALOS:  No.

16           THE COURT:  No?

17           MS. MACCLUGAGE:  No.  We represent to the court that

18   actually we have in our trust account all $52,000 ready for

19   payment.

20           THE COURT:  OK.

21           MS. AVALOS:  Thank you.

22           THE COURT:  So you want to settle the case today?

23           MR. KOZOLCHYK:  Yes.

24           THE COURT:  So the terms are 24,736 for the plaintiff,

25   and what is the attorneys' fees and the costs?  You said you

```
1    are going to divide it by, how many is it?  21?

2              MR. KOZOLCHYK:  Yes.  But, your Honor, Henry Avila's

3    case is one of the larger -- in fact, I believe it is the

4    largest.  I don't know if a better formula would be to prorate

5    my fees to his portion of the claim, in which case I would need

6    a moment.

7              THE COURT:  I see.  Apportion it to the total amount.

8    OK.

9              You want a couple of minutes?  Why don't you guys

10   discuss that amongst yourselves and I will give you a few

11   minutes.

12             We actually have someone who is going to be working on

13   the courtroom here, so if you can get together.

14             MS. AVALOS:  Outside, your Honor?

15             THE COURT:  You can do it in here.  I am going to go

16   inside.  I am just saying that there are some people waiting to

17   come in here to do work on the courtroom.  So don't take too

18   long.

19             MS. AVALOS:  Judge, in the abundance of caution, we

20   will also call our client.

21             THE COURT:  OK.  If nothing else, you are saving your

22   client a trial next week which is going to cost more than what

23   you are going to pay to get rid of at least this portion of the

24   case.

25             MS. AVALOS:  We are ready.
```

1        MS. MACCLUGAGE:  Right.  We're ready.

2        Your Honor, the other issue is with Judge Zloch.

3   Judge Zloch is ready to rule on the motion for summary judgment

4   before him and he has us on standby until he enters the ruling.

5   So that might give us enough time maybe after we finish this

6   case.  Well, if we settle this case, you will no longer have

7   jurisdiction.

8        THE COURT:  I will be done with that.  You will have

9   to go to Judge Zloch, unfortunately or fortunately.

10       MS. AVALOS:  We do appreciate your Honor's willingness

11  to preside over the global settlement.  We just, unfortunately,

12  were not able to get it in front of him.

13       THE COURT:  I understand.  I checked Judge Zloch's

14  docket this morning to see if you all had filed anything and I

15  didn't see anything.

16       MS. AVALOS:  No, your Honor.  We unfortunately were

17  not able to file a joint.  We were told not to file the joint.

18       THE COURT:  All right.  Why don't you all talk about

19  how much of the fees you are going to apportion to this and

20  then I will come back out.

21       MS. AVALOS:  Thank you, your Honor.

22       (Recess)

23       THE COURT:  Back on the record in the Avila case.

24       MS. AVALOS:  Judge, may I put the remainder of the

25  terms --

```
 1              THE COURT:  Yes, sure.
 2              MR. KOZOLCHYK:  We are not in agreement as to the
 3     terms, your Honor.  So whatever she is about to read does not
 4     accurately represent the terms.
 5              THE COURT:  What do you think the terms are?  Let's
 6     hear what the money is first.
 7              MR. KOZOLCHYK:  OK.  Fees -- again, I'm prorating
 8     it -- so fees are $16,493.79.  That's for fees.
 9              THE COURT:  Your client.
10              MR. KOZOLCHYK:  With my client receiving 24,736.20.
11              THE COURT:  Everybody in agreement with that?
12              MS. AVALOS:  We are relying on his calculations,
13     Judge.  He said he prorated it.
14              THE COURT:  OK.  24,000 divided by 250.
15              MR. KOZOLCHYK:  The math was 24,736 divided by
16     180,285.08, to come up with the fraction of 13.72 percent
17     multiplied by the $120,211.85 of attorneys' fees, and that's
18     how we reached --
19              THE COURT:  OK.  So we are in agreement on that.
20              How about costs, are you prorating that too?
21              MR. KOZOLCHYK:  I cut it in half.  So that's 1136.
22              THE COURT:  Is there something you are not in
23     agreement to?
24              MR. KOZOLCHYK:  Yes.  There are several things.  There
25     is a lot we agree on.  There are some things we don't agree on.
```

1          THE COURT:  How can you have a settlement if you don't

2    agree?

3          MR. KOZOLCHYK:  Because we have been in the process of

4    trying to iron this out up until 12:15 p.m. today before we

5    drove down here.

6          THE COURT:  All right.  You have to be in agreement to

7    the terms of settlement to have a settlement, don't you?

8          MS. AVALOS:  Your Honor, we are in agreement to the

9    material terms.  He added last night for the first time at 8:15

10   a provision about bankruptcy.  We are not in agreement about

11   the bankruptcy because -- may I approach your Honor with a

12   case?

13         THE COURT:  Tell me what the provision is on the

14   bankruptcy.

15         MS. AVALOS:  Is that we agree not to discharge in

16   bankruptcy the settlement agreement.

17         MR. KOZOLCHYK:  All of this is false, your Honor.  Not

18   true.

19         THE COURT:  That is fine then.  So he doesn't want

20   that agreement.

21         MR. KOZOLCHYK:  What she is conveying to you is

22   inaccurate.

23         THE COURT:  What do you want them to do in bankruptcy?

24         MR. KOZOLCHYK:  I'm sorry.  I didn't quite catch that.

25         THE COURT:  What is the problem with the bankruptcy?

```
 1          MR. KOZOLCHYK:  We are asking -- we want

 2   representations.  They can file bankruptcy as much as they

 3   want.  We want representations that they will not file

 4   bankruptcy and seek to discharge this debt.

 5          Now, at the end of the day if they seek to do that,

 6   the agreement is not prohibiting them from doing that, but my

 7   clients are relying on their representation that they will not

 8   do that in entering into this agreement.

 9          Now, they have cited certain case law -- they have

10   given it to me -- showing that you can't waive dischargeability

11   in bankruptcy.  We are not seeking to waive dischargeability.

12   But my clients are relying on their representation that they

13   will not file bankruptcy and seek to discharge this.

14          MS. MACCLUGAGE:  How can they tell you that?

15          THE COURT:  I have never heard of that as a term of an

16   agreement.  If that's what you want, then you don't have an

17   agreement because they are telling you they are not going to

18   agree to that.

19          I don't know how you can say I'm not going to file

20   bankruptcy for the next 77 months.  If tomorrow their place

21   burns down and they don't have any income, aren't they going to

22   file bankruptcy?  What else are they going to do?

23          I don't understand.  If that is the term you want,

24   that is a very unusual term.  Good luck.  We will go to trial

25   on Monday.
```

```
 1              MS. AVALOS:  Your Honor, may I address the issue?

 2              THE COURT:  Yes.

 3              MS. AVALOS:  May I approach with my case at least,

 4     your Honor?

 5              THE COURT:  OK.

 6              MS. AVALOS:  It is a Southern District bankruptcy case

 7     from Judge Leiber, your Honor.  And basically what it says --

 8     it was a settlement agreement in a divorce.  And if you look on

 9     page 3, your Honor -- I believe it is highlighted --

10     "Bankruptcy:  The obligations of this agreement shall not be

11     subject to discharge in bankruptcy."

12              If you look at the judge's opinion on page 4, at

13     headnote 1, it says:  "Paragraph 9 of this agreement will give

14     it no effect because it's unenforceable."

15              THE COURT:  Right.

16              MS. AVALOS:  So, your Honor, he is saying we are not

17     going to settle this agreement because it's unenforceable.

18              Your Honor, we are here before you on a reasonable and

19     fairness hearing.  I don't think it is prudent upon us as

20     officers of the court to say that we agree to this provision

21     that is unenforceable.

22              THE COURT:  He is saying that is not the provision he

23     wants, I think.

24              MR. KOZOLCHYK:  That's right.

25              THE COURT:  What is the provision you want?
```

```
 1            MR. KOZOLCHYK:  That defendants represent that they
 2   will not file bankruptcy and seek to discharge this debt
 3   obligation.
 4            MS. AVALOS:  Your Honor, respectfully, he's asking for
 5   an agreement, a pre-petition waiver of that dischargeability.
 6   That's exactly what -- he wants us to represent it, but, your
 7   Honor, this is an agreement.  He is wanting us -- he's calling
 8   it a representation.  It's an agreement.  We want you to agree
 9   that you will not charge us in bankruptcy.  That's exactly what
10   it is.  And under the Code, your Honor, it is unenforceable.
11   It is against public policy.
12            The whole purpose of the bankruptcy is to do a fresh
13   start.  Constitutionally they are allowed to do that, and it's
14   been cited in this case.  Your Honor, I have another case, your
15   Honor, from Virginia, bankruptcy from Virginia, 2016, citing
16   these cases.  It's clear it is not an enforceable provision.
17   We are here before your Honor in a fairness hearing.  I think
18   that, your Honor, we need to bring it to your attention that
19   you cannot --
20            THE COURT:  But I'm not here to determine what the
21   terms of the settlement agreement are.  What I am here to
22   determine is the terms that you agree to, is that a fair
23   settlement of an overtime matter, is what I'm here to do.
24            I mean, I agree -- what he is saying is not much
25   different than what is in this case.  It is a little bit
```

1    different, but it is not much different.  In all intents, it is

2    the same thing because the court is not going to enforce that

3    term of a settlement agreement because otherwise people will be

4    going, oh, yeah, I am not going to discharge your debt in

5    bankruptcy, but I'm going to discharge someone else's debt in

6    bankruptcy, and then the debtor gets to decide who gets paid

7    and who doesn't get paid.

8          That is not the way bankruptcy works.  In bankruptcy,

9    you come in there, you show the court what all the debts are,

10   they decide who gets priority and who doesn't.

11         Look, Mr. Kozolchyk, you either have an agreement or

12   you don't have an agreement.  We try this case next week if

13   that's what you want to do.  I can't tell you whether or not --

14   I mean, from counsel it sounds like if you put that in the

15   agreement, it wouldn't be enforceable in bankruptcy court

16   anyway.  I can't tell you that.

17         MS. AVALOS:  Your Honor, I think that the whole thing

18   is that he is trying to protect his client to make sure he gets

19   paid.  We entered into an agreement for the amount because we

20   knew that we could make this payment.

21         THE COURT:  Right.

22         MS. AVALOS:  Right?

23         There is a default provision, your Honor.  If we

24   default on the payments and not cure within the cure period,

25   there is a $500,000 judgment that is entered.  That is

```
 1    security, your Honor.
 2              THE COURT:  Yes.  I mean, I agree with you.
 3              MR. KOZOLCHYK:  All right.  Your Honor, I will
 4    withdraw that particular term.
 5              THE COURT:  OK.
 6              MS. AVALOS:  Thank you, your Honor.
 7              THE COURT:  All right.
 8              MS. AVALOS:  Is there anything else, Elliot, that we
 9    talked about --
10              THE COURT:  Tell me the other general terms.  I have
11    got this now --
12              MS. AVALOS:  So there is a default provision, your
13    Honor.
14              THE COURT:  Which in this case would be 500,000.  You
15    are going to need to prorate that as well.
16              MS. AVALOS:  Well, we are going to need to prorate
17    that, correct.
18              THE COURT:  Is that the same 13 percent?
19              MS. AVALOS:  Yes, Judge, I would say it is the same 13
20    percent.
21              THE COURT:  Does that make sense?
22              MR. KOZOLCHYK:  Just one moment, please.  I am going
23    to do the math.  It is 13.72 percent.
24              It is a little bit of a longer fraction, but I have no
25    problem with that.
```

```
 1            THE COURT:  13 percent is $65,000.

 2            MR. KOZOLCHYK:  Just one second, your Honor.

 3            (Pause)

 4            MR. KOZOLCHYK:  OK.  $68,603.15.

 5            THE COURT:  $68,603.

 6            MS. AVALOS:  And 15 cents.  That's the default.

 7            THE COURT:  All right.  What else?  Is there

 8    confidentiality?

 9            MS. AVALOS:  There is, Judge.  There is a

10    confidentiality provision.

11            MR. KOZOLCHYK:  But there's not a -- we have an

12    agreement on that after -- did you accept my --

13            MS. AVALOS:  It is our position that the

14    confidentiality provision is a material term of the agreement.

15    Counsel objects to putting in the settlement agreement that

16    confidentiality is a material term of the agreement.

17            MR. KOZOLCHYK:  I would like to justify my position on

18    that, your Honor.

19            THE COURT:  Look, I am not here to argue.  I have

20    never had one of these cases that you didn't have a

21    confidentiality agreement.  If anybody asks your client what

22    happened in this case, he says it was settled amicably.

23            MR. KOZOLCHYK:  We are agreeing to a confidentiality.

24    We are agreeing to that.

25            THE COURT:  OK.
```

1          MR. KOZOLCHYK:  What we are not agreeing is allowing

2     over a seven-year payment plan then to somehow down the line

3     argue that he supposedly breached confidentiality and therefore

4     they can stop making payments because, oops, that was a

5     material term.

6          MS. AVALOS:  We are beyond that.  I'm sorry to

7     interrupt.  We're beyond that.

8          MS. MACCLUGAGE:  That's already in the agreement.

9          MS. AVALOS:  We said that any type of breach of the

10    confidentiality is not an excuse to not make the payments under

11    the settlement agreement.

12          If we are going to bring a breach of the agreement,

13    your Honor, that term has to be material.  If he breaches the

14    confidentiality, it has to be material terms to bring to your

15    Honor if there are any damages.  We are allowed to do that to

16    enforce the agreement.

17          THE COURT:  Do you want to agree to it or not,

18    Mr. Kozolchyk?

19          What they are saying is they are going to keep paying

20    you, but they can bring it to the court's attention.  I have

21    never heard of a case where you couldn't bring it to the

22    court's attention, or else what would be the point of the

23    clause?

24          MR. KOZOLCHYK:  We are agreeing to confidentiality.

25    We are agreeing to confidentiality.  They want to add in other

1  language that could potentially be used to argue that they can

2  stop making payments.

3          MS. AVALOS:  That is not correct.

4          MS. MACCLUGAGE:  I'm sorry.  May I, your Honor?

5          MS. AVALOS:  Sorry.

6          MS. MACCLUGAGE:  Specifically under paragraph 8 of the

7  agreement it says:  "Defendants agree that plaintiffs breaching

8  confidentiality is not a defense nor does it excuse defendants

9  failing to make payments pursuant to Section 2 of the

10  agreement."

11          It can't be more clear than that.

12          MR. KOZOLCHYK:  Then why do you want the language of

13  it being a material term?

14          MS. AVALOS:  Because in order to bring a breach of

15  contract under the law, the term has to be material.  That is

16  one of the elements of a breach of contract claim.

17          MS. MACCLUGAGE:  There may be other remedies that

18  don't impact our obligation to continue paying under the

19  settlement agreement.  There may be other remedies to our

20  client.

21          THE COURT:  If your client agrees he is going to keep

22  it confidential and he doesn't, they can sue you and say he

23  broke this contract, and then the court would determine what

24  damages.  Was it a thousand dollars or was it everything that

25  he was paid?  That is what the courts are there for.

1          Look, I'm not here to settle this case.  You guys are

2     here.  If you want to settle it, settle it.  If you don't want

3     to, Mr. Kozolchyk, then let's go.  Tell me about what we're

4     trying next week.

5          MR. KOZOLCHYK:  OK.  I will withdraw that objection.

6          THE COURT:  I mean, what other objections do you have?

7     Are we doing a settlement conference here or are we doing a

8     fairness hearing?  I am not here to twist your arm.  Don't

9     agree to anything if you don't want to.

10         MR. KOZOLCHYK:  Those are not the only terms that we

11    are disagreeing.

12         THE COURT:  Then why did you come here today and tell

13    me we were having a fairness hearing?

14         What are the other terms you have a problem with?

15         MR. KOZOLCHYK:  Are we in agreement on the default

16    agreement and the mechanics of how that works?

17         MS. AVALOS:  We are in agreement on the default

18    provision.  I will either agree to your $50 demand or I will

19    substitute another e-mail.

20         MR. KOZOLCHYK:  All right.  So we have no problem with

21    that.

22         THE COURT:  I am not interested in the minutia of your

23    agreement.  I want to know what the terms are and whether or

24    not there is an agreement.

25         MS. MACCLUGAGE:  Judge, there is really only one other

```
 1   substantive issue.

 2             THE COURT:  What is that?

 3             MS. MACCLUGAGE:  We agreed to provide a successor

 4   liability provision, and we are fine with providing a successor

 5   liability provision.  We have difficulty with plaintiff's

 6   wording that they want us to bind new owners.  They are not in

 7   privity to that contract so we can't bind new owners.  We can

 8   only bind our CWC, our company, and any successors and assigns

 9   of our company.

10             MR. KOZOLCHYK:  Your Honor, since this case has been

11   filed Clemente Cruz has taken his name off the corporation,

12   moved his son's name off the corporation.  They can operate

13   through his son, they can sell the business, they can start

14   another business that does exactly the same thing as CWC.  The

15   three individuals could file bankruptcy and then start a new

16   business, different name than CWC in exactly the same business.

17             So I am trying to guard against these things that they

18   might try to do to avoid paying over a seven-year time line.

19             THE COURT:  You're saying that -- I don't know.  They

20   are agreeing to successor liability.  Obviously if someone else

21   comes and buys from them, they can't bind them.  They can bind

22   their own clients, the individuals, and the -- the individuals

23   are in this case, right?

24             MS. AVALOS:  Correct, your Honor.

25             MS. MACCLUGAGE:  And they are joint and severally
```

1    liable, Judge.  Not only on the payments, but also on the

2    default provision.

3          MS. AVALOS:  Your Honor, if there is a stock sale and

4    the stock goes to somebody else, our individuals are still

5    liable under there.  The CWC is still in place.  If it is an

6    asset agreement, your Honor, then they assume the liability or

7    there is a deficiency on the asset purchase.

8          THE COURT:  The individuals are still liable no matter

9    what, correct?

10          MS. AVALOS:  Yes, your Honor.

11          MS. MACCLUGAGE:  Correct.

12          MS. AVALOS:  And especially under the default

13    provision.

14          THE COURT:  Look, I am not here to settle this case.

15    If you guys want to settle it, then tell me what the terms are.

16    If you don't want to settle it, then forget about it.  If you

17    want to settle it for this guy and you can argue about these

18    terms in front of Judge Zloch for the other 87 percent of the

19    case, that's fine.

20          If you want to settle this case, then tell me that you

21    are in agreement and tell me what the terms are because it is

22    going to be based on -- it is not going to be contingent on

23    anybody signing any agreement; it is going to be based on what

24    the terms are as explained in court here today.  If you don't

25    agree on the writing, it doesn't matter because we refer to

```
 1   whatever is on the record here.

 2          MR. KOZOLCHYK:  I just need to ask Catalina a question

 3   about --

 4          THE COURT:  Go over there and ask her then.

 5          (Pause)

 6          THE COURT:  It is going to be whatever is on the

 7   record in here.

 8          MR. KOZOLCHYK:  I understand.

 9          THE COURT:  By the way, the way I see it, is it 13

10   percent?

11          MS. AVALOS:  13.72 percent.

12          THE COURT:  So the other payments, in other words, the

13   52,000 to be paid in ten days, that is going to also be at 13.

14   If for some reason Judge Zloch doesn't agree to this, that is

15   going to be divided the same way, correct?

16          MS. AVALOS:  Right.  And then the $20,000 payment,

17   your Honor?

18          THE COURT:  And the 3,000 a month.

19          MS. AVALOS:  In the 90 days and then the 3,000 a

20   month.

21          THE COURT:  Right.

22          MS. AVALOS:  We will do that.

23          THE COURT:  I don't need the exact numbers, but

24   everybody agrees that 13.78, whatever the percentage is, would

25   apply to the other numbers that were previously announced.
```

```
 1              Everybody is in agreement?

 2              You look confused, Mr. Kozolchyk.  You don't agree to

 3    that?

 4              MR. KOZOLCHYK:  Everything sounds fantastic, your

 5    Honor, except for one thing.  Some things are a little more

 6    complicated.

 7              Some of my clients have very small claims.  In order

 8    to get the deal done, I had to pay them outright without a

 9    seven-year payment plan.  That is where that $20,000 payment

10    comes in.  So the $20,000 payment is not prorated, but I'm

11    trying to see if --

12              THE COURT:  If the Judge Zloch thing falls apart, that

13    is how this would come into play.

14              MR. KOZOLCHYK:  OK.

15              THE COURT:  They would be obligated to pay you at the

16    same percentage as is.

17              MR. KOZOLCHYK:  No problem.

18              MS. MACCLUGAGE:  Your Honor, I'm sorry.

19              THE COURT:  Yes.

20              MS. MACCLUGAGE:  He just represented to the court that

21    he is going to pay them outright on the $20,000 and whatever

22    the $50,000.  He is not planning on making the payments over

23    the seven-year period under the agreement, your Honor.  So how

24    does that work?  So now we don't make the payment?

25              MS. AVALOS:  That is not what is in here.
```

```
 1              MS. MACCLUGAGE:  Under our agreement, your Honor, it

 2     is unpaid wages and liquidated damages, 50/50.

 3              Your Honor, if I can just approach and just show you

 4     this.  This is from Mr. Elliott.

 5              (Pause)

 6              MS. MACCLUGAGE:  Because he has represented -- your

 7     Honor, he has represented to us, and we just had this

 8     conversation at 12:15 today about your office is going to get

 9     two checks per plaintiff and your attorney fee.  So if he is

10     paying them outright already, then how --

11              THE COURT:  I don't know how you are going to do that

12     if he is sending you two checks.

13              Every month you are going to send checks --

14              MS. MACCLUGAGE:  Yes, your Honor.

15              THE COURT:  -- to 22 people?

16              MS. MACCLUGAGE:  That is his request.  Yes, your

17     Honor.  That is what his request is.

18              THE COURT:  Well, that doesn't sound consistent with

19     what you just told me, is it?

20              MR. KOZOLCHYK:  I am waiting for them to go.  When

21     they are finished, I will clarify all this because this is not

22     even an issue, your Honor.

23              THE COURT:  All right.

24              MR. KOZOLCHYK:  This is not even an issue.

25              THE COURT:  Well, if it is not an issue, then I don't
```

1   need to address it.  But if it is an issue -- I shouldn't be

2   addressing it anyway.

3        MR. KOZOLCHYK:  They presented all this confusion.  So

4   I mean, I would like the court to know there is no confusion,

5   that they presented -- that that is not true.

6        May I approach so I can show part of the settlement

7   agreement?

8        THE COURT:  OK.  You need to go to a microphone.

9        MR. KOZOLCHYK:  This chart shows 79 payments.  The

10  first one at 52,768.93, then $3,000 payments every month with

11  the exception of payment four at 20,000, and the very last

12  payment is 2,000.  So it is showing each month for the next

13  seven years.

14       This next chart shows for each payment how is it

15  distributed.  Again, they have had this.  There has been no

16  confusion about it.

17       You will see for each payment how it's distributed

18  there are some that are blank and then a huge cash out from

19  those people where it is blank on payment four.

20       THE COURT:  Can I show it to opposing counsel and if

21  you guys are able to work it out, let me know or if you are not

22  able to work it out, let me know.  If you are not able to work

23  it out, be prepared to discuss everything that we talked about

24  because this is our pretrial conference or our calendar call.

25       (Recess)

```
 1              THE COURT:  All right.  Please be seated unless you

 2    are addressing the court.

 3              We are continuing in the Avila case.

 4              Is somebody ready to announce the terms of the

 5    settlement?

 6              MS. MACCLUGAGE:  Yes, Judge.  I am happy to announce

 7    that we have reached an agreement not only on this case but on

 8    Judge Zloch's case as well.  The terms are as follows:

 9    Monetary terms on this agreement are:  The fees are $16,493.79.

10              THE COURT:  Yes.

11              MS. MACCLUGAGE:  Mr. Avila will receive -- and these

12    are all gross amounts, by the way.

13              MR. KOZOLCHYK:  Just to clarify, these numbers do not

14    pertain to Judge Zloch's case.

15              THE COURT:  Yes.  I understand that.

16              MS. MACCLUGAGE:  Mr. Avila will receive gross

17    24,736.20.

18              THE COURT:  Right.

19              MS. MACCLUGAGE:  Costs will be $1,136.

20              THE COURT:  OK.

21              MS. MACCLUGAGE:  And the default provision is

22    $68,603.15.

23              THE COURT:  OK.

24              MS. MACCLUGAGE:  With a seven-business-day opportunity

25    to cure.
```

```
 1                THE COURT:  OK.  Is there a confidentiality
 2    non-disparagement?
 3                MS. MACCLUGAGE:  Yes, sir.  I am going to go through
 4    the remainder of the terms.
 5                There is a default provision as I discussed.  There is
 6    a mutual general release to be executed by the parties.  There
 7    is a confidentiality provision.  There is a nonadmission of
 8    liability.  And there is a successor of liability provision.
 9                We have gone through the agreement that we had
10    previously worked on, your Honor, and we have gone through the
11    entire agreement.  I have made revisions.  I am going to ask
12    the court if the court would be able to make a copy for us so
13    that I can give one to Mr. Elliot.
14                THE COURT:  Sure.
15                MS. MACCLUGAGE:  And we will then go ahead and
16    finalize the written agreement.
17                THE COURT:  OK.  Tell me about the payments.  How are
18    these payments being made?  When and --
19                MS. MACCLUGAGE:  Yes, sir.  The payments are going to
20    be made as follows.  I think Mr. Kozolchyk is going to inform
21    you as to the breakdown, your Honor.
22                THE COURT:  OK.
23                MS. MACCLUGAGE:  The first payment is within ten days
24    of the court approving the settlement agreement.
25                THE COURT:  OK.
```

```
 1              MR. KOZOLCHYK:  OK.  Mr. Avila is going to receive his

 2   first payment of $4,429.91.

 3              THE COURT:  In what?  Ten days?

 4              MS. MACCLUGAGE:  Yes, your Honor.  I want to just make

 5   sure.  It is ten days.  I guess today you would approve the

 6   settlement.

 7              THE COURT:  Yes.

 8              MS. MACCLUGAGE:  May I request that it be ten days

 9   from the time that we sign the agreement?  Because he has a

10   seven-day revocation period.

11              THE COURT:  No, because it is not contingent on

12   signing the agreement.  You can make it three weeks from today

13   instead of two weeks if that is what you want to do.

14              MR. KOZOLCHYK:  I would prefer to keep it ten days.

15   We are going to have an agreement on the rest of this, but we

16   have a settlement today on this.

17              MS. MACCLUGAGE:  That is fine, your Honor.

18              THE COURT:  OK.

19              MS. MACCLUGAGE:  Because the court will then dismiss

20   the case, correct?

21              THE COURT:  It will be dismissed today.

22              MS. MACCLUGAGE:  OK.  Then I have no problem with

23   that.

24              MR. KOZOLCHYK:  And we respectfully request the court

25   to reserve jurisdiction to enforce this agreement.
```

```
 1              THE COURT:  Yes.

 2              MR. KOZOLCHYK:  So again there are 79 total payments.

 3     The first payment is the 4,429.91.

 4              Now, each of the remaining 78 payments is monthly with

 5     the exception of payment four.  Payment four is due on May 12,

 6     2018 or before.  Payment four is for $129.23.

 7              THE COURT:  And the other payments are for how much?

 8              MR. KOZOLCHYK:  The other payments are on the 1st of

 9     the month.  They are payments two, three and five through 78.

10              THE COURT:  Yes.

11              MR. KOZOLCHYK:  Those payments, again, which are

12     payments two, three and five through 78, are for $263.18.

13     These are monthly payments on the 1st of the month.

14              MS. MACCLUGAGE:  Excuse me.  Beginning April 1, 2018?

15              MR. KOZOLCHYK:  Beginning April 1, 2018.

16              THE COURT:  OK.

17              MR. KOZOLCHYK:  Just so we are clear, that means that

18     there will be a payment on May 1, a payment on May 12, and then

19     another payment on June 1st.  That's what -- because payment

20     four comes in the middle and doesn't stop the other payments.

21              And then payment 79, the last payment, is for $175.45.

22              THE COURT:  And your 16,000 in attorneys' fees, how

23     are those payments being made to you?

24              MR. KOZOLCHYK:  Right.  So the numbers I just gave,

25     it's all going to Mr. Avila.
```

```
 1              THE COURT:  Yes.

 2              MR. KOZOLCHYK:  My fees are going to be distributed

 3    proportionate and they are going to be prorated monthly similar

 4    to the way Mr. Avila's prorated monthly.  The exact math we

 5    haven't calculated yet, but the total amount for my fees and

 6    costs are accurate.  We are just going to distribute it

 7    proportionate similar to the way it was prorated for Mr. Avila.

 8              THE COURT:  So you're not getting all your fees up

 9    front.  You're getting paid your fees along with your clients,

10    correct?

11              MR. KOZOLCHYK:  Correct.

12              THE COURT:  Or along with Mr. Avila.

13              MR. KOZOLCHYK:  Correct.

14              THE COURT:  Then that's fine.

15              All right.  I find this is a fair settlement of an

16    overtime matter.  There is a legal dispute as to whether or not

17    the plaintiff is exempt under the, what is it called?

18              MR. KOZOLCHYK:  Motor Carrier exemption.  But, your

19    Honor, there are still more terms --

20              THE COURT:  Oh, I'm sorry.

21              MR. KOZOLCHYK:  -- if we may.

22              Another term is that in the event that CWC, in the

23    event that defendants sell CWC via through an asset purchase or

24    any other kind of sale, then defendants will either pay out the

25    remaining outstanding balance in full under this agreement,
```

1   under this settlement or, in the alternative, will ensure as a

2   term of the written agreement and transaction providing for the

3   sale of CWC that the buyer will become jointly and severally

4   liable to make payments per this agreement, including be

5   subject to the default provision.

6          THE COURT:  OK.  Anything else?

7          MS. MACCLUGAGE:  Not from the defense, your Honor.

8          THE COURT:  Anything else?

9          MS. AVALOS:  I just wanted to say thank you.

10         THE COURT:  OK.  Thanks.

11         MR. KOZOLCHYK:  I too would like to thank you.

12         I just want to clarify something else for the record.

13  While opposing counsel and I did reach agreement as to both

14  cases outside, the copy of the written terms that she is going

15  to ask that you respectfully make a copy of may or may not

16  necessarily fully represent that agreement, but we have orally

17  reached agreement outside.

18         THE COURT:  OK.  This agreement is not contingent on

19  the other 20 something people that are in front of Judge Zloch.

20  This agreement stands on its own.  So I am happy to copy that,

21  and this agreement is not contingent on anybody signing

22  anything.  The agreement is as it was described on the record

23  and it is accepted by the court as a fair settlement of an

24  overtime matter.  And the reason why it is a fair compromise is

25  because there is a legal dispute as to whether or not -- legal

1    and factual dispute as to whether or not the plaintiff is

2    exempt as a result of the Motor Carrier Act.

3           So I find that the compromise is fair.  I find that

4    the fees and costs are fair as well.  I am going to dismiss the

5    case with prejudice.

6           Let's talk about reserving jurisdiction.  You want me

7    to reserve jurisdiction until when, Mr. Kozolchyk?

8           MR. KOZOLCHYK:  Until payments are made.

9           THE COURT:  For 80 months?

10          MR. KOZOLCHYK:  We would -- we don't anticipate -- we

11   would request that -- I mean, we are not going to be

12   bothering -- we don't expect to bother the court every month or

13   even close to that.

14          THE COURT:  If I am bothered once, there is going to

15   be a judgment that is going to be entered.

16          I will reserve jurisdiction for 80 months because the

17   last payment is due in 79 months, if I understand it correctly,

18   right?

19          MS. AVALOS:  Yes, your Honor.

20          MR. KOZOLCHYK:  80 months from April 1st.

21          THE COURT:  80 months.  So this is what?  I will

22   reserve jurisdiction for 82 months to enforce the terms of the

23   settlement.

24          All right.  Anything else requested by either party?

25          MR. KOZOLCHYK:  Thank you, your Honor.

```
 1            MS. AVALOS:  No, your Honor.

 2            THE COURT:  OK.

 3            MR. KOZOLCHYK:  No.  Thank you.

 4            THE COURT:  Thanks for getting the matter reserved and

 5   good luck to everybody.

 6            MS. MACCLUGAGE:  Thank you, your Honor.

 7            THE COURT:  I am going to get it taken care of.

 8            Thanks for all the hard work of everybody.

 9            MS. MACCLUGAGE:  Thank you, your Honor.

10            (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2                          C E R T I F I C A T E

3

4        I hereby certify that the foregoing is an accurate

5   transcription of the taped proceedings in the above-entitled

6   matter.

7

8   March 15, 2018            /s/ Joanne Mancari
                              Joanne Mancari, RPR, CRR, CSR
9                             Court Reporter
                              jemancari@gmail.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25